[Civ. No. 13795.   First Dist., Div. Two.   June 16, 1949.]

NORTON MANN et al., Appellants, v. PACIFIC GREY-
HOUND LINES et al., Respondents.

Melvin M. Belli, Thelen, Marrin, Johnson & Bridges and Van H. Pinney for Appellants.

Hoge, Pelton & Gunther, Leo V. Killion and Bronson, Bronson & McKinnon for Respondents.

GOODELL, J.—This is an appeal from a judgment of dismissal of this action on the day set for its trial, and from an order denying appellants' motion to restore the cause to the trial calendar and to set aside their default.

On August 28, 1946, the complaint was filed alleging negligence of the defendant Pacific Greyhound Lines, its bus driver defendant Hurbace, and defendant Hawkins, who was the driver of another passenger car on the highway, resulting in the death of Calvin Mann and serious injuries to plaintiffs William and Kenneth Mann, all three of whom were riding as guests in an automobile which collided with the bus. Damages in a large amount were claimed.

Defendant Hawkins answered October 25, 1946, represented by Messrs. Bronson, Bronson and McKinnon. The answer of defendants Greyhound and Hurbace, represented by Messrs. Hoge, Pelton and Gunther, was filed on October 26.

On October 30, plaintiffs filed a memorandum to set the cause for trial by jury. On February 17, 1947, the matter was continued to the March setting calendar. On March 17, the trial was set for April 17 and 18, 1947, by jury.

On April 10, a stipulation dated April 7 was filed, signed by the attorneys for plaintiffs and for Greyhound and Hurbace (but not by Hawkins' attorneys) continuing the trial from April 17 "to a late date in May, as the Court may deem proper."

On April 17, the court, instead of continuing the case "to a late date in May," ordered "Trial dropped reset memo at end of calendar."

On July 18, 1947, Hawkins' counsel filed a new memorandum to set cause for trial showing that a jury trial was *not* demanded. It bears admissions of service on July 17 signed by counsel for plaintiffs and counsel for Greyhound and Hurbace.

On July 23, counsel for Greyhound and Hurbace filed a demand for jury trial, with the receipt of a copy admitted by counsel for plaintiffs only.

On August 4, 1947, the court ordered "Trial set for September 3, 1947." On August 15, a notice of time (Sept. 3) and place of trial was filed, showing service on the 13th on counsel for plaintiffs and counsel for Greyhound and Hurbace. The notice was given by counsel for Hawkins, who had served and filed the second and last memorandum to set.

Thus on August 15, the trial was definitely set for September 3 and all counsel had the statutory notice of trial 21 days in advance of the trial day. The case was set and notice given not by plaintiffs but by defendant Hawkins.

On Wednesday, September 3 at 10 o'clock counsel for defendants Greyhound and Hurbace and counsel for defendant Hawkins were in court and answered ready when the case was called. Twenty-two prospective jurors were present. Attorney Jonathan Rowell, who was not an attorney of record, was present at the request of Attorney Belli and applied for a continuance because he (Belli) was engaged in the trial of another case in San Francisco. He presented two affidavits which had been made that morning, one by Attorney Belli, the other by Miss Thomas, his secretary. From

the discussion between court and counsel it was apparent that the plaintiffs were not prepared to go to trial on that day. The court denied a continuance. Counsel for defendants Greyhound and Hurbace then moved for a dismissal and counsel for defendant Hawkins did likewise. Both motions were granted (see Code Civ. Proc., § 581, subd. 3; also § 594.)

On October 2, a notice was served by plaintiffs on all defense counsel that on October 13 they would move the court "to restore the above cause to the trial calendar and set aside default entered on September 3, 1947." This motion was denied on November 21.

Notice of appeal was filed on December 19, 1947, from the judgment of dismissal and from the order denying plaintiffs' motion to set aside default and restore cause to the trial calendar.

Appellants' motion to restore the case to the trial calendar and to "set aside default entered on September 3, 1947" by its own terms concedes a default, and the only question for decision on that phase of the appeal is whether good grounds existed for such relief.

■ Section 1010, Code of Civil Procedure, requires the statement in a notice of motion of "the grounds upon which it will be made, and the papers, if any, upon which it is to be based." The notice contains no such statements. Section 473, Code of Civil Procedure, provides that "The court may . . . relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect" and it must be assumed that the motion was designed to seek such relief. No objection seems to have been made to the insufficiency of the notice. Court and counsel apparently treated it as substantially bringing the matter before the court, and we shall so treat it. ■ The only question, then, is whether there was an abuse of discretion in the denial of the motion.

Accompanying the notice of motion was an affidavit of Attorney Belli in which he incorporated his affidavit of September 3 (when he sought the continuance). Later the affidavit of Miss Thomas was served and filed wherein she incorporated her affidavit of September 3. Affidavits in opposition to the motion were filed by counsel for Hawkins and by two of the counsel for Greyhound and Hurbace.

It appears that there was a conversation between Messrs. Belli and Gunther respecting the continuance of this case. No conflict is raised in their respective affidavits as to what

was said therein, but there is a dispute as to when it took place. In a case entitled *Deschamps* v. *Independent Cab Co.*, wherein Belli represented the plaintiff and Gunther the defendants, Belli had a motion pending to advance its trial date. Gunther telephoned Belli and told him that he did not want to try the Mann case on September 3 because he had a case in Napa County set for the 2d; that if it was settled he would try the Deschamps case with Belli on the 3d, instead of the Mann case. Belli acceded to this proposal on Gunther's promise to draw up a stipulation for the continuance of the Mann case and to phone the clerk and arrange it, and with the proviso that the Mann case would not be dropped from the calendar. The conflict is as to the date of that telephone conversation, Belli deposing that it was on August 25 (a Monday) and Gunther that it was on August 22 (a Friday). Gunther in his affidavit states that on the 22d, after that conversation, while preparing the promised stipulation he found (what he had apparently overlooked) that there was another defendant, Hawkins, in this case and thereupon, on the 22d, telephoned to the office of Hawkins' attorneys but found that Attorney Lawrason Driscoll (who was handling the case) was out, and left his number. On Monday, the 25th, according to both Gunther's and Driscoll's affidavits, Driscoll on getting back to his office from out of town, returned Gunther's call of the 22d and was told by him what had gone on respecting a proposed continuance, to which Driscoll replied that the case had been set for trial at their (Hawkins') instance; that he had been instructed by his client to proceed to trial and not to agree to a continuance, and added that if either Gunther or Belli desired one the matter should be taken up with the court. He asked Gunther to inform Belli that he could not consent. There is no conflict between Gunther and Driscoll as to this exchange of calls, or when they occurred, or what was said and done by each.

In Gunther's affidavit he states that on the same day, Monday, the 25th, he informed Belli over the telephone that following their previous conversation he had drawn the stipulation as promised and in doing so learned that there was a codefendant (Hawkins) in the case, and on communicating with Driscoll he had been informed by him that the trial date had been set at their (Hawkins') instance "and that their client desired to press the . . . action to trial and that they would not sign the stipulation." Further he deposed that thereafter Belli made no effort to specially set the Des-

champs case, and that Belli at that time was fully informed that so far as a stipulation was concerned, there would be no continuance of the Mann case. He stated also that either on August 27 or 28, he attempted to talk with Belli but was unable to reach him and that on either one of those days he talked with Belli's secretary to determine whether anything further had been done to secure a continuance and that she expressed herself as at a loss to know anything that could be done about securing such continuance.

In his affidavit Belli says nothing respecting a telephone call from Gunther reporting Driscoll's refusal to stipulate. He leaves the matter with Gunther's promise to arrange for the continuance, and says that upon that he "assumed said case was put over." He adds that thereafter he called Gunther "several times on other matters but Gunther was not in and did not call back" and that he had "not talked to him since said date" [Aug. 25].

In Miss Thomas' affidavit she says that she listened in on a telephone conversation between Messrs. Belli and Gunther on August 25 and upon learning that Gunther was to arrange a continuance of this case she communicated with plaintiffs William and Kenneth Mann, both out of the state, and directed them not to come to California for the trial; that she also arranged for another case to be tried on September 3.

To summarize: Mr. Belli and Miss Thomas both fix the Belli-Gunther conversation as Monday, August 25, and neither says anything respecting a further Belli-Gunther conversation reporting the Driscoll refusal to stipulate.

Gunther places the first Belli-Gunther conversation on Friday, August 22, and a second one on Monday, the 25th, wherein he reported the Driscoll refusal. Driscoll places the Gunther-Driscoll conversation on Monday, the 25th.

The problem presented to the trial court on the motion was whether plaintiffs were entitled to relief from the judgment of dismissal because of their "mistake, inadvertence, surprise or excusable neglect." ▇ That problem was presented on affidavits, and it is definitely settled that "In the consideration of an appeal from an order made on affidavits, involving the decision of a question of fact, the appellate court is bound by the same rule that controls it where oral testimony is presented for review. If there is any conflict in the affidavits, those in favor of the prevailing party must be taken as true, and the facts stated therein must be considered

established.'' (1 Cal.Jur. 681; 2 Cal.Jur. 932.) Hence it appears that the trial court settled the conflicts in favor of the respondents and accepted as true the statement in the Gunther affidavit that it was on Friday, August 22, that he first discussed a continuance with Belli and that it was on Monday, August 25, after Driscoll had definitely refused to stipulate *that Gunther relayed this refusal to Belli.*

The question which then confronted the trial court was simply whether an attorney, who, nine days before a trial date (Aug. 25-Sept. 3) learns that an adversary party refuses to stipulate to a continuance, can remain inactive until the hour of trial and then claim ''mistake, inadvertence, surprise and excusable neglect'' when his last-minute application is denied?

The question answers itself.

There were other conflicts but it is not necessary to discuss them since under the rule in 1 California Jurisprudence, page 681, *supra,* they were resolved in favor of the respondents.

The denial of the continuance is reviewable herein on the appeal from the judgment of dismissal (*Marx* v. *McKinney,* 23 Cal.2d 439, 444 [144 P.2d 353].)     It was pointed out earlier that plaintiffs' motion for relief by its very terms concedes their own default. Such concession of course weakens any claim they might make that it was error for the court to deny the continuance.

Plaintiffs have cited on this appeal just seven California cases and one from elsewhere. *Pickett* v. *Hastings,* 39 Cal. 105 is cited by appellants in support of their contention that they had been lulled into a false security by Greyhound's counsel. If, however, Gunther telephoned to Belli on Monday, August 25, as soon as he learned that Driscoll would not stipulate, there was nothing in his conduct on which an estoppel could be based.

In each of the other six California cases it is true there was a reversal for failure to grant a continuance, but each of them presented a situation totally different from that presented here. In *Jaffe* v. *Lilienthal,* 101 Cal. 175 [35 P. 636] the plaintiff was seriously ill in Seattle; in *Morehouse* v. *Morehouse,* 136 Cal. 332 [68 P. 976] the defendant had suffered serious injuries in an accident; in *Betts Spring Co.* v. *Jardine Machinery Co.,* 23 Cal.App. 705 [139 P. 657] the defendant was seriously ill in Europe; in *Pacific G. & E. Co.* v. *Taylor,* 52 Cal.App. 307 [198 P. 651], the defendant was seriously ill in Boston; in *Carl* v. *Thomas,* 116 Cal.App. 294 [2 P.2d 872],

the defendant had obtained a leave of absence so as to attend the trial, but a letter notifying him of the date miscarried in the mails; in *Swayne & Hoyt* v. *Wells-Russell & Co.*, 169 Cal. 204 [146 P. 686], a material witness residing in Mendocino County could not be reached in time and both sides agreed in writing to a two weeks' continuance but despite their stipulation the court denied the application. They are clearly distinguishable and appellants cite no other cases.

When plaintiffs' application for continuance was presented to the court it was upon an affidavit in which Attorney Belli stated that he was "presently engaged in jury trial in San Francisco, *Burgess* v. *Doerr*; that he will start another jury trial in San Francisco on Monday, September 8th, *Murray* v. *Southern Pacific Company*." This brought the plaintiffs' showing within such cases as *McGuire* v. *Drew*, 83 Cal. 225, 231 [23 P. 312] and *Canty* v. *Pierce & Anderson*, 173 Cal. 205 [159 P. 582] where one of the parties chose to be elsewhere than in the courtroom at the time set for trial, and *Tobias* v. *Adams*, 206 Cal. 88, 89 [273 P. 579], and *Berendsen* v. *Babdaty*, 62 Cal.App. 185, 189 [216 P. 385] where counsel had another professional engagement. In none of them did the court hold the excuse to be a valid one.

Defendant Hawkins had caused the case to be set for trial and the statutory notice of trial had been served by him on August 13, which was nine days before the first Belli-Gunther conversation. By that written notice and by the telephone message from Gunther to Belli on August 25, the latter had been "fully advised of the desire [of Hawkins] to proceed with the trial upon the day set and of the fact that no further continuance would be consented to" (*Canty* v. *Pierce*, 173 Cal. 205, 208, *supra*; see, also, *Thomas* v. *Toppins*, 206 Cal. 18 [272 P. 1042]).

It was "a part of the bounden duty of the trial judge, in the absence of some weighty reason to the contrary, to vigorously insist upon cases being heard and determined with as great promptness as the exigencies of the case will permit." (*Flynn* v. *Fink*, 60 Cal.App. 670, 673 [213 P. 716; *Estate of Dargie*, 33 Cal.App.2d 148, 158 [91 P.2d 126].) The chronology given earlier shows that once before this case had been set for trial and then dropped from the calendar by a stipulation between plaintiffs and Greyhound without consulting defendant Hawkins, and that when it was on the calendar for September 3 it was there because Hawkins had

taken the initiative and had brought it on for trial, as he had a right to do (Code Civ. Proc. § 594).

Five days before the trial date, i. e., on Friday, August 29, the clerk of the court telephoned to Attorney Belli's office that the case would go to trial on September 3, and on the same day the judge himself told the secretary in that office over the telephone "definitely, as far as the Court was concerned, the jury was going to be here, and that the Court was ready to proceed, and if the attorneys wanted to make stipulations about continuances they ought to consider the Court once in a while." (See *Weinberger* v. *Manning,* 50 Cal. App.2d 494, 497 [123 P.2d 531]; *Nicholson* v. *Nicholson,* 85 Cal.App.2d 506, 509, 510 [193 P.2d 112].) Miss Thomas in her affidavit, after referring to her telephone conversations with the judge and the clerk on the 29th says: "That Mr. Belli had no knowledge of your deponent's conversation with Judge Scott until after the weekend holiday; that on September 2d, he was advised while in the process of a jury trial in San Francisco . . ."

We find no error in the court's denial of the motion for a continuance.

The burden was on the plaintiffs, on their motion under section 473, to convince the court that the judgment of dismissal had been entered because of their "mistake, inadvertence, surprise or excusable neglect" (*Bruskey* v. *Bruskey,* 4 Cal.App.2d 472, 479 [41 P.2d 203]; *Weinberger* v. *Manning,* 50 Cal.App.2d 494, 497, *supra*). That motion was heard some weeks after the judgment of dismissal and meanwhile all the parties had ample opportunity to present by affidavit their respective showings. On this appeal the burden of convincing this court that the denial of the motion for relief was an abuse of discretion was of course on the appellants (*Hecq* v. *Conner,* 203 Cal. 504, 509, 510 [265 P. 180]; *Stub* v. *Harrison,* 35 Cal.App.2d 685, 690 [96 P.2d 979]) and that burden has not been sustained.

The appeal from the judgment and from the order are, and each of them is, affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied July 16, 1949, and appellants' petition for a hearing by the Supreme Court was denied August 11, 1949. Carter, J., voted for a hearing.