[Civ. No. 49441. First Dist., Div. One. July 23, 1982.]

In re the Marriage of JACQUELINE J. and ROBERT A. JOHNSON.
JACQUELINE J. JOHNSON, Respondent, v.
ROBERT A. JOHNSON, Appellant.

COUNSEL

Donald J. De Vries and Michaud, Weber, De Vries & Hernandez for Appellant.

William K. Wilburn and Nancy Ann Gee for Respondent.

OPINION

**BANCROFT, J.*—**Appellant husband appeals from an interlocutory judgment of dissolution entered on August 31, 1979. He makes various contentions regarding the denial of his motion for continuance, the date of separation, the valuation and distribution of community property, the amounts awarded as child and spousal support, a certain promissory note, the imposition of liens and the lack of findings of fact and conclusions of law.

The case is remanded for further proceedings consistent with the views expressed in this opinion as to the note and the liens but otherwise affirmed.

### STATEMENT OF FACTS

Respondent wife (hereafter Jacqueline) by her petition filed April 17, 1979, stated, inter alia, that the parties married on July 1, 1964, in Reno, Nevada, had not separated by the petition's filing date, and had a male child of 14 years and a female child of 11 years. In his own behalf, appellant husband (hereafter Robert) filed his response on June 4, 1979, conceding that the statistical information in the petition was correct and, for the most part, challenging only Jacqueline's valuation of the most valuable asset, the family home. Pursuant to an at-issue memorandum filed on June 12, 1979, a July 18, 1979, notice set the trial date for August 27, 1979. Jacqueline's counsel moved on August 1, 1979, for a continuance on account of his vacation plans. Jacqueline then secured new counsel who on August 10, 1979, filed an order to show cause (hereafter OSC) for support and for restraining orders together with a motion to restore the August 27 trial date.

Robert appeared at the OSC hearing on August 22, 1979, when the court awarded temporary monthly payments of spousal support in the sum of $500 and child support in the amount of $175 per child for a monthly total of $850. Relevant portions of the order entered that date are as follows: "3. ... This order is subject to Respondent's reasonable rights of visitation when *Respondent has not been drinking for a period of at least 24 hours prior to such visitation.* ... [¶] 8. The Court orders that, *in the event that Respondent does not make the payments herein ordered, the payments shall be charged against and taken out of*

---

*Assigned by the Chairperson of the Judicial Council.

*Respondent's share of the community property of the parties.* [¶] 9. The Court further orders that *the Court specifically finds that Respondent is capable of working and earning money in more than sufficient amounts to pay the support ordered herein,* but has failed to do so." (Italics added.)

The case was called for trial on August 27 and 28 but not assigned until August 29th when it was heard before the same judge who heard the order to show cause. Evidence was presented primarily through Jacqueline's testimony, not subjected to cross-examination, covering the date of separation; community property and debts; the earnings, earning capacity and expenses of the parties; spousal and child support; attorneys fees; and the imposition of liens on Robert's share of the community property as security for spousal and child support payments.

Both parties had filed financial declarations. On the trial date, Jacqueline filed an additional financial statement attached to her proposal for the distribution of community property and support payments.[1] At the conclusion of the hearing, the trial judge announced his decision from the bench. Robert requested no findings. A six-page interlocutory judgment prepared by Jacqueline's counsel was entered August 31, 1979.

Robert became represented for the first time when counsel substituted into the case on September 12, 1979, and filed a notice of intention to move for a new trial. On September 20, 1979, Robert's lawyer filed a request for findings of fact and conclusions of law. The court filed no written findings and conclusions. Instead, on October 12, 1979, the court filed its memorandum decision on the motion for a new trial setting forth the court's position regarding what it considered to be the late filing of the request for findings of fact and conclusions of law. The court also increased by 10 percent the face value of a note awarded to Robert as his community property share, provided that unless Jacqueline accepted the 10 percent increase, it would grant the new trial motion. Jacqueline accepted the 10 percent increase.

Additional facts will be set forth in this opinion as necessary to the issues under discussion.

Robert appeals, contending the trial judge committed reversible error in:

---

[1] The "17.1 Statement" according to Santa Clara County rules.

1. Denying his motion for a trial date continuance;

2. Utilizing the April 1, 1978, separation date;

3. Setting the spousal and child support amounts;

4. Valuing and disposing of the community residence;

5. Failing to make findings of fact and conclusions of law;

6. Imposing the liens against his share of the community property.

## I. *Continuance*

The continuance issue arose at the outset of the trial when Robert said he would like to have an attorney and handed to the clerk a card as he said, "I talked to one, this gentleman, here." He stated his debts left him without funds to engage counsel. We treat Robert's remarks as a request for a continuance in order to engage counsel. When the court denied the "motion," it did not abuse its discretion.

Both parties cite 4 Witkin, California Procedure (2d ed. 1971) Trial, section 7, page 2865, for the well established proposition that the trial judge exercises a broad discretion in ruling on a motion for continuance. At the time of the request, the judge noted that the request was "a little late in the day . . . ." The judge had specifically warned Robert at the OSC hearing on August 22, 1979, to get a lawyer. Also, Robert had appeared at the OSC hearing apparently while intoxicated and the court made a specific finding supported by testimony that Robert had a serious drinking problem. After he was served with the original petition, he filed his response and financial statement and appeared at the OSC hearing—all without counsel. His only claim is that he didn't have funds for an attorney.

No showing was made that the continuance request was in good faith and not solely for the purpose of delay. Clearly, there was no violation of the right to counsel in this civil case and it is not argued. In view of the court's duty to hear and determine cases "'with as great promptness as the exigencies of the case will permit,'" there appears to be no abuse of discretion in the circumstances of this case. (*Mann* v. *Pacific Greyhound Lines* (1949) 92 Cal.App.2d 439, 446 [207 P.2d 105].) "Unnecessary continuances are wasteful, nonproductive, time-consuming and a

fertile ground for criticism by the public of the courts." (*County of San Bernardino* v. *Doria Mining & Engineering Corp.* (1977) 72 Cal.App. 3d 776, 781 [140 Cal.Rptr. 383].) If there were error, it was only procedural in nature. (*Larson* v. *Solbakken* (1963) 221 Cal.App.2d 410, 429 [34 Cal.Rptr. 450].) No miscarriage of justice resulted which would justify a reversal. (Cal. Const., art. VI, § 13; *Larson* v. *Solbakken, supra*, at pp. 429-430.)

## II. *Separation Date*

■ Robert contends the court erred in finding the date of separation to be April of 1978.[2] Jacqueline testified to that date although her petition showed that the parties were not yet separated by the date of its filing on April 17, 1979. There was really no conflict in the trial evidence. Robert conceded there had been "no home life, no family life, no nothing ... for several years." Whatever conflict there may appear to be, the trial court resolved it based upon substantial evidence and consequently allowed reimbursement to Jacqueline for her payment of community debts after April 1978 in light of Civil Code section 5118.[3] (*In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 435-436 [119 Cal.Rptr. 590]; *In re Marriage of Baragry* (1977) 73 Cal.App.3d 444, 448 [140 Cal.Rptr. 779].) See footnote 2, *ante.*

## III. *Support Payment Reservation*

Robert contends the trial judge, instead of making specific awards, should have reserved jurisdiction on either spousal support or both child and spousal support. His contention is without merit.

### A) *Spousal Support*

The interlocutory judgment ordered Robert to pay child support in the amount of $175 per month for each of two children totalling $350

---

[2]The court's finding is clearly implied, although not stated in the interlocutory judgment, from the colloquy between the court and Robert at trial and from the fact that the court reimbursed Jacqueline for her payment of community debts from her separate property during the year in question. Robert does not contend the finding was not made.

[3]Civil Code section 5118 provides: "The earnings and accumulations of a spouse ..., while living separate and apart from the other spouse, are the separate property of the spouse." (All statutory references hereafter are to the Civil Code unless otherwise indicated.)

plus spousal support in the sum of $150 per month. Robert was unemployed at the time of trial and had no other income. His income reflected in tax returns and W2 Forms from 1969 through 1978 declined from $24,129 in 1973 to $9,461 for seven months of 1978. Despite his engineering degree, he had not worked steadily for over three years. He was formerly a vice president and sole share owner of a small corporation.

Jacqueline's take home pay at trial was shown to be $722.15 monthly. At trial she was a 41-year-old, full-time employed office manager, secretary, and bookkeeper. She had worked full time before and during the first three years of the marriage and part time beginning three years after the birth of her children.

On the other hand, Robert had previously been able to earn in excess of $24,000 per year; he was 41-years-old at the time of trial; he failed to pursue a pretrial interview regarding employment which was said to pay $32,500, plus a company car, because he had two drunk driving convictions resulting in a suspended license and considered hiring a driver to be an impractical solution. The court was satisfied that Robert was seriously under the influence of alcohol at the OSC hearing. He admitted he had been unemployed on a continuing basis since April 1976. After that date, work was intermittent and he did some consulting.

Section 4801 provides in pertinent part: "(a) In any judgment decreeing the dissolution of a marriage ..., the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable. In making the award, the court shall consider the following circumstances of the respective parties: [¶] (1) The *earning capacity* and needs of each spouse. [¶] (2) The obligations and assets, including the separate property, of each. [¶] (3) The duration of the marriage. [¶] (4) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse. [¶] (5) The time required for the supported spouse to acquire appropriate education, training, and employment. [¶] (6) The age and health of the parties. [¶] (7) The standard of living of the parties. [¶] (8) Any other factors which it deems just and equitable." (Italics added.)

■ The trial court has broad but not unlimited discretion in setting spousal support payments pursuant to section 4801. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41].) ■ Robert seems to contend that the court could not fix spousal

support payments in this case, since he was unemployed at trial. Such is not the law. Section 4801, subdivision (a) commands that earning *capacity*, among other circumstances, be considered.

Nor was it the law before the phrase "earning capacity" was added to further define the term "circumstances of the ... part[y]," the sole statement of criteria in the original version of section 4801 (Stats. 1969, ch. 1608, § 8, p. 3333) and in its predecessor, section 139. (*Pencovic v. Pencovic* (1955) 45 Cal.2d 97, 100 [287 P.2d 501]; cf. *Philbin v. Philbin* (1971) 19 Cal.App.3d 115 [96 Cal.Rptr. 408]; *Baron v. Baron* (1970) 9 Cal.App.3d 933, 943 [88 Cal.Rptr. 404].)

The court apparently concluded that Robert could abstain from the use of intoxicants and earn a living and pay support monies in the future. Substantial evidence supported such a conclusion. In determining the amount of spousal support, the court considered the relevant facts and acted within its discretion. (*In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446 [152 Cal.Rptr. 668].)

Finally, although Robert contends the court should have reserved jurisdiction over support payments, he ignores language in section 4801, subdivision (a) which established continuing jurisdiction to modify support orders.[4]

As our high court stated: "A court's decision concerning the amount of support can, however, be modified at any time during the support payment period. (Civ. Code, § 4801, subd. (a).)" (*In re Marriage of Morrison, supra*, 20 Cal.3d 437, 454, fn. 11.)

### B. *Child Support*

Robert asserts, but apparently does not seriously contend, that child support should not have been awarded, likewise for the reason that he was unemployed at the time of trial. But no abuse of discretion appears in the award of child support in this case either. Should Robert notice a motion to modify and at the hearing establish to the satisfaction of the court that his circumstances have changed, i.e., that he no longer has

---

[4]Section 4801, subdivision (a) reads: "... Any order for support of the other party may be modified or revoked as the court may deem necessary, except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke ...."

the earning capacity, he may be entitled to a modification of either spousal or child support or both. (§§ 4801, subd. (a), 4700.)

## IV. *Community Property*

Robert contends that the court abused its discretion in three respects regarding the community property. The first is that there was not substantial evidence to support the valuation of the community residence. The second is that the court abused its discretion in dividing the community property. The third is that the court improperly ordered conditional liens upon Robert's share of the community property as security for spousal and child support payments.

### A) *The Residence*

■ We may dispose briefly of the evaluation of the community residence. There was uncontested testimony from Jacqueline that the family home had a value of $100,000, minus the sum of $5,000, as necessary repairs. The sum of $28,600, representing the balance due on the first and second mortgages was shown in Jacqueline's petition. The net figure thus arrived at by the court was $66,400 consistently with Jacqueline's testimony. There was no contrary evidence. Substantial evidence thus supports the court's conclusion in evaluating the house.

### B) *The Community Property Division*

■ In dividing the community property, the court subtracted the community debts from the community assets and divided the balance in half to arrive at a net figure of $29,358.38 to be awarded to Robert since the family home was awarded to Jacqueline. The proceeds of a note arising from a sale by the parties of their Tahoe vacation property is to be divided equally between the parties as the payments are made. Substantial evidence clearly exists in support of such a division and no abuse of discretion is shown.

Robert contends however that when the court ordered Jacqueline to execute a note in favor of Robert in the sum of $29,358.38, it failed to discount it properly in accordance with *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927 [134 Cal.Rptr. 161]. Jacqueline responds that the *Tammen* issue was laid to rest by the trial court when, on husband's motion for new trial, Jacqueline was required to increase the

face value of the note by 10 percent or face a new trial. She agreed to the increase.

Robert nevertheless contends, on the authority of *In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591 [141 Cal.Rptr. 597] and *In re Marriage of Herrmann* (1978) 84 Cal.App.3d 361 [148 Cal.Rptr. 550], that the note in this case was unnecessary and not marketable. Section 4800, subdivision (b)(1) authorizes notes in the situation presented in this case, for it provides: "Where economic circumstances warrant, the court may award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property." Here there are no liquid assets of either party; there is a lengthy marriage; there are orders for child and spousal support threatened by Robert's irresponsibility; he has threatened to disappear and perhaps not abide by court orders; and the parties apparently cannot occupy the same house as tenants in common on account of Robert's violence. Economic circumstances warrant the use of a conditional promissory note in this case.

Robert argues, however, that the note ordered by the court is required to provide that the entire balance becomes due and payable on certain triggering events, such as Jacqueline's death, cohabitation, or the sale or refinancing of the home. Additionally, he reasons that the addition of 10 percent to the face value of the note still does not result in an equal division of the community property under Civil Code section 4800 especially since the value of the note may be seriously affected by the liens upon it.

"A trial court has a great deal of flexibility in dividing community property to achieve the greatest equity and, indeed, is encouraged to be innovative." (*In re Marriage of Duke* (1980) 101 Cal.App.3d 152, 158 [161 Cal.Rptr. 444], referring to *In re Marriage of Boseman* (1973) 31 Cal.App.3d 372 [107 Cal.Rptr. 232], citing Rep., Assem. Com. of Judiciary, 1 Assem. J. (1970 Reg. Sess.).) "The exercise of a trial court's sound discretion is best preserved by maintaining a maximum degree of allowable flexibility." (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 603 [153 Cal.Rptr. 423, 591 P.2d 911].) Under the Family Law Act, the trial court has a duty to make a division of community property which is not only mathematically equal but *practical* and *equitable* as well. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 885 [160 Cal. Rptr. 516, 603 P.2d 881].) Section 4800 of the Civil Code does not require an in-kind division of community property. (*In re Marriage of*

*Connolly, supra,* 23 Cal.3d at p. 603.) Ample authority exists for a court, consistently with sections 4800 and 4801, where economic circumstances warrant it, to award temporarily the exclusive occupancy of the family home, the major community asset, to a spouse, usually the wife,[5] who is awarded the children upon a series of conditions protecting the interests of the "out of possession" owner in his equity in the home until the ultimate sale when the children have reached their majority. (See, e.g., *In re Marriage of Escamilla* (1982) 127 Cal.App.3d 963 [179 Cal.Rptr. 842]; *In re Marriage of Thompson* (1979) 96 Cal.App. 3d 621, 625-626 [158 Cal.Rptr. 160]; *In re Marriage of Herrmann, supra,* 84 Cal.App.3d 361, 365-366; *In re Marriage of Boseman, supra,* 31 Cal.App.3d 372, 376.)

Robert contends that the note should immediately become due and payable upon Jacqueline's cohabitation with another adult male. We disagree. Of a similar contention, the *Escamilla* court properly observed: "We fail to perceive what adverse impact [such a condition] would have upon respondent's rights in the property or upon the children's need to live in the house as a means of support. While the continual presence of a third person in the residence might well have an adverse emotional impact upon a nonpossessory father, any such effect would be far outweighed by the benefits accruing to the children from occupancy of the family home. It would be unduly harsh to penalize the children for the possessory owner's personal relationship with third parties. Moreover, with respect to the remarriage condition, it has been held that the continuing parental duty to support minor children is independent of the marital status of the parents." (*In re Marriage of Escamilla, supra,* 127 Cal.App.3d 963, 970.)

## C) *The Lien*

■ Robert complains also that in other instances, the trial court did not require that Jacqueline's note to him be paid off upon certain other contingencies. However, in view of our conclusion that the trial court abused its discretion in imposing a lien upon Robert's distributive

[5]Depriving a wife of certain controls over her financial future may be "inconsistent with the Legislature's stated objective that the woman's 'approaching equality with the male should be reflected in the law governing marriage dissolution and in the decisions of courts with respect to matters incident to dissolution.' (Assem. Com. Rep. on Assem. Bill No. 538 and Sen. Bill No. 252 (The Family Law Act), Com. on Judiciary, 4 Assem. J. (1969 Reg. Sess.) p. 8062; [citations].)" (*In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 394-395 [145 Cal.Rptr. 716].)

share of community assets, including the aforementioned note, we shall discuss the matter of the note and the lien together.

A brief factual background is essential here to present the issue. In its interlocutory judgment, the trial court awarded Robert a one-half interest in a note representing the proceeds of the sale of community held Tahoe real property. The Tahoe property note provided for payments of $220 per month for seven years, totalling $18,480, plus a $25,000 balloon payment due in 1986—altogether, the note's minimal value being $43,480. Robert's 50 percent share would thus be $21,740.

Additionally, the "Jacqueline note" representing Robert's interest in the family residence was fixed (after the new trial motion induced the addition of 10 percent to its face value) in the sum of $32,294.22 to equalize the difference in community property passing to the wife. Robert's share of the community property thus turns out to be his interest in these two notes—a total sum of $54,034.22.

Having observed Robert to be intoxicated at the OSC hearing and having heard testimony from both parties of Robert's not inconsiderable insobriety over several years, the trial judge found Robert to have an alcohol problem of "gargantuan" proportions. The trial judge specifically found that although Robert has the ability to work, he would dissipate his share of the community property and "render himself incapable of discharging his obligations to support his children and his former wife."

Accordingly, the court, as security for Robert's payment of spousal support and child support, found good cause for, and did impose, a lien upon the entire $54,034.22 sum "until it is clearly shown to the court that [he] has solved his personal problems and shown himself to be sufficiently responsible to assure the prompt payment of child and spousal support. The court specifically finds that this order is necessary to maintain the family at a reasonable level of existence while [Robert] hopefully seeks another career and [Jacqueline] supports the family."

Robert argues cogently in his brief that the lien against the Jacqueline and Tahoe property notes is unreasonable. He contends, "Appellant has been effectively deprived of acquiring any other property, including a home of his own, a new business, or anything of that nature for many, many years. This, of course, assumes that he cannot come into court with an order to show cause based upon changed circumstances and prove to the court that he has steady employment and has cured any al-

cohol problem of 'gargantuan' proportions. It appears that there is a scarcity of reported cases in this area—probably for the reason that the lien imposed is clearly unreasonable. Other remedies are clearly available to respondent should appellant not provide for the support payments, including order to show cause re: contempt, wage assignments, executions, and receiverships." We agree. We find no support in California cases for the imposition of a lien such as is involved in the instant case.

There is ample, if not overwhelming, evidence in support of each of the findings of the trial judge, except that we find no legal support for the conclusion that those findings permit the imposition of the lien here involved. The lien lacks certainty or even probability as to the time or circumstance which will permit Robert to receive *any portion* of his share of the community property. Although for laudable reasons, the trial judge has virtually established a conservatorship without a hearing.[6] The precise nature and likely duration of Robert's drinking problem has not been appropriately determined, whether temporary and curable or permanent and incurable.[7] Upon remand, the trial court shall exercise its discretion to assure Robert's enjoyment of his community property share. Thus, the Jacqueline and Tahoe property notes, if ordered, must contain reasonable contingencies upon the occurrence of which Robert is certain to be paid off *within a reasonable time in all the circumstances.*

The trial judge may use any of the contingencies already provided for in its interlocutory judgment and should consider other contingencies suggested by the decisions of our courts, including but not limited to, a payoff when the younger child reaches his majority and a payoff when the house is refinanced. Additionally, the trial judge should consider, if the lien technique is utilized as security for the payment of court ordered support, restricting its use reasonably so as not to deprive Robert of his share of the community property for an indefinite period of time or upon contingencies uncertain ever to occur.

---

[6]See, e.g., 7 Witkin, Summary of California Law (8th ed. 1974) Wills and Probate, sections 591-592, pages 5991-5992; *id.* (1982 supp.) sections 615A, 632A-634A, pages 295-296, 310-313.

[7]We have learned that at the time of the April argument in this case Robert had made no support payments and that he was serving a sentence of a year in the county jail for his second drunk driving conviction.

## V. *Findings and Conclusions*

█ Finally, Robert contends the court erred in not making written findings of fact and conclusions of law. There were in fact neither findings of fact and conclusions of law nor a memorandum of intended decision. The court announced its decision from the bench and asked Jacqueline's attorney to draw the order.

█ Written findings and conclusions are required only if they are requested.[8] (Code Civ. Proc., § 632.) █ A request for findings must be served and filed within ten days after oral announcement of intended decision in open court. (Former Cal. Rules of Court, rule 232 (b).) The court's decision was orally announced on August 29, 1979. Robert's request was not made until September 20, 1979.

· The interlocutory judgment was signed on August 30, 1979, the day immediately following the trial. Thus, Robert claims he didn't have a 10-day period within which to request findings. Although it no doubt would have been preferable for the court to have advised Robert that he had 10 days within which to request findings, no legal duty for the trial judge to do so has been found. "A lay person, who is not indigent, and who exercises the privilege of trying his own case must expect and receive the same treatment as if represented by an attorney—no different, no better, no worse." (*Taylor* v. *Bell* (1971) 21 Cal.App.3d 1002, 1009 [98 Cal.Rptr. 855], citing *Doran* v. *Dreyer* (1956) 143 Cal.App.2d 289, 290 [299 P.2d 661].)

Although "it is the duty of a trial judge presiding over the trial of a case being conducted by a layman or a laywoman in propria persona to see that a miscarriage of justice does not occur through inadvertence, he is not required to act as counsel for that party . . . ." (*Taylor* v. *Bell, supra,* 21 Cal.App.3d 1002, at p. 1008, citing *Lombardi* v. *Citizens Nat. Trust etc. Bank* (1955) 137 Cal.App.2d 206, 209 [289 P.2d 823].) The trial judge conceded in his memorandum decision of ruling on motion for new trial that the interlocutory judgment was entered prematurely but explained:

"Technically, he is correct; but practically, it makes no difference. The fact is that the case was heard by this Court on August 30 in the

---

[8]Civil Code section 4512 states that, as in other cases, "the court must file its decision and conclusions of law."

morning. The judge was leaving on a month's vacation at 4:00 p.m. that afternoon. Counsel for Petitioner rushed through the interlocutory judgment, having prepared it from the court reporter's readback of his notes. The Court then signed the judgment just before leaving. No demand for findings of fact and conclusions of law was made by the Respondent Johnson (although he was in pro per) and the Court is reasonably sure that both it and counsel for the Petitioner overlooked the absence of a waiver of findings. Nevertheless, the request for findings was filed late. Even if the judgment had not been signed on August 30 the request for findings filed by Respondent Johnson was filed so long after August 30 that requested findings would have been denied in any event. Consequently, the argument that the interlocutory was entered prematurely because of the absence of findings is basically moot. It would be bootless to set aside the interlocutory, then deny the request for findings and then have the interlocutory entered as of a later date." We agree. In any event, there was no abuse of the trial judge's sound discretion. We find neither error nor prejudice.

The cause is remanded to the trial court for further proceedings in accordance with the views expressed in this opinion, including an award of reasonable attorneys' fees on appeal in favor of appellant; and, as so modified, the judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied August 13, 1982, and respondent's petition for a hearing by the Supreme Court was denied September 22, 1982. Bird, C. J., was of the opinion that the petition should be granted.