Filed 8/2/13  P.A. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| P.A., | |
| Petitioner, | E058526 |
| v. | (Super.Ct.No. J238206) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Judge Cheryl C. Kersey.  Petition is denied.

Friedland & Associates and Melvin Friedland for Petitioner.

No appearance for Respondent.

Jean-Rene Basle, County Counsel, Kristina M. Robb and Richard Van Frank, Deputy County Counsel, for Real Party in Interest.

1

Petitioner P.A. seeks review of an order by the superior court terminating reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1] Her sole legal challenge is that the trial court should have continued the review hearing, at which she was not present allegedly due to health problems, until she could attend. We find no abuse of discretion and deny the petition.

## STATEMENT OF FACTS[2]

The minor, B.H., born August 1998, was being cared for by her legal guardian, T.L., in April of 2011. However, the latter became drunk and abusive during an "exchange/pick up" of B.H.[3] and police were called. When interviewed by a social worker for Children and Family Services (CFS), B.H. stated that her guardian was physically and verbally abusive, and that she wished to live with a family friend, petitioner P.A. P.A. then told the social worker that she was preparing guardianship paperwork for B.H., and that she had been willing to care for the minor after her mother died, but was superseded by family members. B.H. was first placed in foster care; the trial court eventually found her to be a dependent child.

Eventually, after the matter was transferred to Los Angeles County (the county of T.L.'s residence), T.L. was removed as the minor's guardian. In August of 2011, B.H.

---

[1] All subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Due to the nature of the issue before us, only the briefest synopsis of the history of the case is necessary.

[3] The social worker's report is far from clear, but apparently B.H. was going for a visit—or perhaps permanently—to her sister's home.

was placed with P.A., who shortly thereafter obtained letters of guardianship. The social worker observed that B.H.—who had known P.A. since she was seven—seemed very close to her guardian. The case was then transferred back to San Bernardino County, where P.A. resided.

At that time a brief report by the San Bernardino social worker indicated that B.H. was "thriving" and reported that she was happy living with P.A., whom she referred to as "Grandma." The placement with P.A. was confirmed by the court. At the status review hearing in March 2012, the court found that the placement remained appropriate; the minor was "very happy" and was no longer exhibiting adjustment behaviors at school. P.A. was monitoring her behavior and had arranged counseling.[4]

However, in June of 2012 a supplemental (§ 387) petition was filed in which CFS alleged that P.A. had failed to contact CFS over a period of several weeks. It turned out that P.A. and the minor were in the process of moving without having notified CFS, and that in fact, at the moment, they were not living in the residence of record, but were staying with P.A.'s daughter in a home shared by several other people. (None of whom, of course, had been vetted by CFS.) It was apparent that P.A. was in a difficult situation as the move is referred to as an "eviction," but she confirmed her desire to continue to care for B.H. B.H. complained of stress and stomach pains, but was receiving therapy.

---

[4] B.H.'s health "passport" dated March 6, 2012, noted a history of "cutting" and setting fires. B.H. had right-sided deafness, needed glasses but had lost them, and was noted as being overweight.

3

Later in the day, however, the social worker was in the neighborhood and saw B.H. walking on the street crying. P.A. had told her that she might have to go into foster care and B.H. believed that this was because she "was bad." P.A. did not respond to the social worker's attempts to contact her and appeared to be avoiding the social worker; she had left the minor alone at the thrift store where P.A. worked. When P.A. did not return, and when no relatives were both willing and qualified to take B.H., she was again placed in foster care.

In the jurisdictional/dispositional report prepared in July 2012, the social worker reported that B.H.'s stomach pains had disappeared and that she seemed happy to have been allowed to visit her mother's gravesite and to speak with an aunt, which P.A. had not permitted. Once again, the court took jurisdiction over B.H. and reunification services were ordered for P.A. She was to engage in parenting classes and counseling.

The next status report was filed in March 2013. The social worker reported that there had been no contact from P.A. during the intervening period and there was no indication that she was attempting to comply with the reunification plan. B.H. was reported as doing well in school with no behavioral issues, and was in regular communication with her aunt. The recommendation was that services to P.A. be terminated due to her failure to participate.

The hearing was scheduled for April 2, 2013. P.A. was present and represented by counsel. When the hearing began, it was noted by the court that the minor seemed upset after speaking with P.A. outside the courtroom. She told the court that she wanted to go back to P.A. and that "I'm closer to Ms. [P.A.] than I am to my foster parent." When the

4

court asked about her visits with P.A., it turned out that there had been no visits although there was an existing order permitting such visitation. This, in turn, led to a discussion basically along the lines of "who was supposed to call whom?" The social worker told the court that CFS was not necessarily opposed to continuing services to P.A., but the worker had assumed that P.A. was no longer interested in reunifying.

The court was clearly skeptical about P.A.'s explanations, but agreed to continue the hearing until April 11 for testimony or other evidence concerning P.A.'s alleged attempts to contact the social worker.

On April 11, P.A. was not present. Counsel informed the court that he had spoken with P.A. the day before and had been told that she had been briefly hospitalized after the April 2 hearing and had been confined to her home since then.[5] She had not been able to predict a date when she would be able to come to court. Counsel therefore requested a continuance.

The trial court noted that P.A. had been in a wheelchair at the April 2 hearing and characterized her statements at that time as "evasive." It also commented that a note from P.A.'s doctor reflected that it was "difficult or impossible" for her to attend and participate, which it interpreted as also supporting the conclusion that she could not participate in services. It therefore denied any continuance and proceeded to set the hearing under section 366.26.

---

[5] It was indicated that she thought she might have had a stroke, as she had previously, but counsel reported that "it was a heart valve that had closed."

5

P.A. asserts that this refusal was error justifying the issuance of a writ of mandate. We disagree.

DISCUSSION

Procedural law in general places the decision of whether or not to grant a continuance squarely in the court's discretion. (See, e.g., *People v. Riccardi* (2012) 54 Cal.4th 758, 834; *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.) Abuse of discretion will normally only be found if the denial results in the absence of a fair hearing. (*In re Marriage of Johnson* (1982) 134 Cal.App.3d 148, 155.) With respect to dependency proceedings, section 352 specifically sets out the requirement that the moving party show good cause for delay, and limits the length of any continuance to "that period of time shown to be necessary by the evidence . . . ." In conformity with the general rule, the abuse of discretion standard applies. (*In re B.C.* (2011) 192 Cal.App.4th 129, 143-144 (*In re B.C.*).)

Section 352 also requires a written motion on two days' notice "unless the court for good cause entertains an oral motion for continuance." As CFS argues, there was no such motion. However, we think CFS's reliance on *In re B.C.* for the conclusion that the request was properly denied as untimely is misplaced.

First, the trial court did not base its denial on the lack of a written motion, but clearly considered P.A.'s request on the merits. Nor was there any abuse of discretion in so doing, as counsel was not clearly dilatory in not calling P.A. until the day before the hearing. Arguably, P.A. should have been proactive in notifying him of her current restrictions; but, in contrast to the situation in *In re B.C.,* the requested continuance was

6

not plainly designed for a tangentially strategic reason.[6] We think the trial court reasonably considered the application on its merits.

However, we also find that it did not abuse its discretion in denying the request on the merits. It had already had the benefit of hearing and evaluating P.A.'s representations at the April 2 hearing and observing her physical condition at that time. P.A. was not able to provide any timeline for her ability to return to court (and, by inference, to participate in reunification services). While the establishment of permanency is obviously not as critical for a minor in her midteens such as B.H., delay cannot be in a minor's best interests if there is no realistic chance that it will offer a superior alternative.

P.A. argues that the minor's statements at the April 2 hearing to the effect that she wanted to return to P.A. should have led the court to do anything possible to see that this happened. But the reason we have courts and judges in these matters is that children do not always know or understand what is in their "best interests," and even when their wishes must be considered, they do not control. (See *In re Alexis W.* (1999) 71 Cal.App.4th 28, 36.)

We do not doubt, from the record before us, that B.H. and P.A. are genuinely fond of each other, and even if the minor is not returned to P.A.'s custody at the section 366.26

---

[6] In *In re B.C.*, *supra*, 192 Cal.App.4th at pp. 134, 145, the court found that the last-minute request for a continuance was intended to give time for the minor's mother to complete a voluntary relinquishment designating a specified relative as proposed adopter. (Fam. Code, § 8700, subd. (f).) Such a relinquishment, if completed before the scheduled section 366.26 hearing, would have placed the mother's preference in an advantageous position compared to the dependency proceedings; the minor at the time was in a prospective adoptive home selected by the county authorities.

hearing, it is to be hoped that the relationship can be maintained and encouraged.  A child can never have too many loving and concerned adults in his or her life.  However, the record also reflects that P.A.'s ability to provide care for the minor is problematic.

In summary, the trial court did not abuse its discretion in denying an open-ended continuance, especially as P.A. had already presented explanations for her failure to participate in services or visit the minor.

DISPOSITION

The petition for writ of mandate is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST _____<br>J.

We concur:


RAMIREZ _____
P. J.


MILLER _____
J.

8