[Civ. No. 3794. First Appellate District, Division Two.—July 16, 1921.]

ABRAM M. MARKS, Respondent v. JOS. H. RUCKER & COMPANY (a Corporation), Appellant.

[1] AGENCY—SALE OF APARTMENT HOUSE—RECOVERY OF DEPOSIT—PARTY DEFENDANT.—Money paid as a deposit upon the purchase price of an apartment house to a real estate agent is legally the property of the vendors, and where the identity of the vendors was known to the purchaser at the time of making such payment, an action for the recovery of the deposit upon a rescission of the purchase should be brought against the vendors and not against the agent.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E'. P. Shortall, Judge. Reversed.

The facts are stated in the opinion of the court.

Lent & Humphrey for Appellant.

Joseph E. Bien and Abram M. Marks for Respondent.

LANGDON, P. J.—This is an action by the assignee of Mrs. K. F. Merrill and Mrs. O. J. Schwab to recover five hundred dollars alleged to be money had and received by the defendant for the use and benefit of said assignors.

The facts of the case are: Mrs. Schwab and Mrs. Merrill had agreed to become partners in the enterprise of purchasing a furnished apartment house in San Francisco. Mrs. Merrill had been negotiating with the defendant company, as agent, for the purchase of various apartments in the city, and had made offers upon some of these and deposited sums of money in accordance with such offers, all of which offers had been rejected by the owners, and on that account her various deposits had been returned to her from time to time. Mrs. Merrill discussed with Mr. Chambers, who was acting for the defendant company, the matter of the purchase by her of the Martinique Apartment House in San Francisco. Mr. Chambers testified that Mrs. Merrill told him at that time that she was thoroughly familiar with this apartment house and had been through it with another agent, but wished to deal with the defendant company, and in order to avoid liability for commissions to the first agent she desired the contract to be signed by her partner, Mrs. Schwab, and not by herself. Mrs. Schwab corroborates this testimony of Mr. Chambers, testifying to substantially the same facts with relation to this matter. The contract was accordingly taken to Mrs. Schwab by the agent, and she signed it. Mrs. Merrill gave her check for five hundred dollars as a deposit upon the purchase price. Mr. Chambers also testified that Mrs. Merrill discussed with him the reasons why the sellers, Mesdames Splane and Warford, were selling their property. He stated that Mrs. Merrill was aware that the sale was being made because of a disagreement between said owners,

and was thoroughly informed about the condition of the property and of its furnishings. Mrs. Merrill contradicts this testimony in part and states that at the time of making the deposit she had only seen the portion of the apartment house which was occupied by the manager's office. She testified that she had gone to this office with a friend. She was asked: "Up to that time [the time of making the deposit] had you seen the house other than a visit to *the owners* of the apartment? A. No, I had not." She also testified that when Mr. Chambers first spoke to her of this apartment house she told him that she "had been in the house a few days previously with a lady who was calling on one of the managers, I was in the manager's apartment only." She was asked in her deposition if Mr. Chambers had said anything to her about seeing the house. She answered: "No . . . Q. Did you ever see that house? A. I saw it afterward. Q. When? A. First with Mrs. Schwab and Mr. Bernhard. Q. That is the first time? A. Yes, after going in with a lady to call *on the owner* of the building in her apartments." From the foregoing it appears that Mrs. Merrill had visited the owner and manager of the building before Mr. Chambers began his negotiations for the sale of the property, and must have been aware of the identity of the principal for whom the agent was dealing. Furthermore, Mr. Chambers testified positively that he had told Mrs. Merrill who were the owners of the Martinique Apartments, and this statement is nowhere contradicted in the record.

[1] It therefore appears that plaintiff's assignors were informed by the agent of the names of its principals. But even though we were to assume that the names of the principals were not actually disclosed to the purchasers by the agent, nevertheless it is apparent from the record that the identity of such principals was known to the purchasers from Mrs. Merrill's previous visit to the owner of the apartment house, and that they contracted with the defendant merely as an agent. To relieve the agent of liability, it is sufficient that the other contracting party have actual knowledge of the identity of the principal; it is immaterial how such knowledge was acquired. (*Chase* v. *Debolt*, 2 Gilm. (Ill.) 371; *Forrest* v. *McCarthy*, 30 Misc. Rep. 125, [61

N. Y. Supp. 853]; *Johnson* v. *Cate,* 77 Vt. 218, [59 Atl. 830].)

There is absolutely no evidence in the record that the defendant dealt with plaintiff's assignors as a principal, or that the parties intended that he should be held personally liable. On the contrary, the offer contained in the letter signed by Mrs. Schwab, which was later accepted by the owners of the apartment and became the contract of purchase, was addressed to "Jos. H. Rucker & Co., Agent," and stated: "I hereby offer to purchase through you as agent . . . "

It is claimed in the present action that the plaintiff's assignors rescinded this contract of purchase because the furnishings of the house were not as represented by the defendant, as agent of the owners. The testimony concerning the condition and value of the furniture was conflicting and it would be improper to discuss it here, because of the fact that, under our view of the case, a retrial will be necessary, at which time the testimony upon this question may vary somewhat from the testimony in the present record. But, merely for the purposes of this opinion, let us assume that the testimony shows facts warranting a rescission of the contract. Under such circumstances, it is apparent that the remedy is against the principal and not against the agent. Respondent attempts to support the judgment against the agent by invoking the rule applied in case of undisclosed principals, but the facts heretofore recited clearly show that the present case is not one of an undisclosed principal; nor is it a case where the parties intended to contract relying upon the personal responsibility of the agent.

Whether or not the agent has paid over this five hundred dollars to his principal or whether or not he yet retains it is immaterial, and there is no evidence in the record upon this point. The agent did not produce a purchaser ready to buy, and has not earned the commission of five hundred dollars agreed to be paid him by the sellers in their written acceptance of the offer of purchase, and is, therefore, not entitled to retain such sum. The five hundred dollars paid by the purchaser was paid to the agent to be applied by it upon the purchase price of the apartment. It was so stated in the contract of purchase and in the receipt given for the money. This amount is, therefore, legally, the property of

the sellers, regardless of whether it had been actually paid over to them or not at the time of the present action. If the purchasers desire to recover back their deposit upon a rescission of their contract to purchase, the question of whether or not they had legal grounds for a rescission of such contract would be an issue to be tried between them and the owners of the apartment, on whose behalf and in whose interests the representations regarding the apartment were made by the agent, and the action should have been brought against such owners.

The judgment appealed from is reversed.

Nourse, J., and Sturtevant, J., concurred.