[No. B022198, Second Dist., Div. Five. Oct. 25, 1988.]

MIDWEST TELEVISION, INC., et al., Plaintiffs and Respondents, v. SCOTT, LANCASTER, MILLS & ATHA, INC., Defendant and Appellant.

444

---

## COUNSEL

Mark Brifman and Joann R. Deutch for Defendant and Appellant.

Raoul Y. Roth for Plaintiffs and Respondents.

---

## OPINION

**KENNARD, J.**—Defendant advertising agency, Scott, Lancaster, Mills & Atha, Inc., appeals from a judgment following a court trial in May 1986 rendering it liable for payment of delinquent accounts for air time run on plaintiff independent television stations. Defendant raises many contentions. Its main contention is that it had acted solely as the agent of a disclosed principal, and therefore it was not a party to the contracts for air time. We affirm the judgment.

### BACKGROUND

In late 1979 and early 1980, defendant ordered air time from plaintiff independent television stations[1] on behalf of its client advertiser, National

---

[1] The plaintiff independent television stations are: Midwest Television, Inc., dba KFMB Television; Evening News Association, dba WDVM Television; Channel Two Television Company/KPRC Radio Company, Inc., dba KPRC AM/TV; WJLA, Inc., dba WJLA Television; Golden West Broadcasters, dba KTLA-TV; Coral TV Corp., dba WCIX-TV; Gay-

Service Corporation. After plaintiff stations had run these spots, defendant denied it was liable for payment on behalf of National Service Corporation, which had declared bankruptcy. Plaintiffs then brought this action against defendant to collect on the delinquent accounts. Defendant raised the affirmative defense it was not a party to the contracts for air time because it had merely acted as the agent of its disclosed principal, National Service Corporation. The trial court ruled in favor of plaintiffs. Defendant appealed.

## A. *Plaintiffs' Case*

At trial, plaintiffs took the position that defendant was a party to the contracts for air time because defendant had failed to give the stations prior notice of its nonliability. Defendant's deemed admissions established that stations customarily hold the advertising agency liable for payment of air time unless they are given prior notice of the agency's nonliability. (Former Code Civ. Proc., § 2033, added by Stats. 1978, ch. 12, § 3, p. 70, and repealed by Stats. 1986, ch. 1334, § 1, p. 4700, eff. July 1, 1987.)[2] Specifically, defendant was deemed to have admitted the following: "It is a standard practice in the advertising industry that media looks [*sic*] to the advertising agency for payment for advertising placed by the agency. [¶] Media that adhere to AAAA [American Association of Advertising Agencies] principles look solely to advertising agencies for payment for advertising." Defendant had also been deemed to admit that each plaintiff station had adhered to this custom in its dealings with defendant.

lord Broadcasting Company, dba KHTV and WUUE; Gulf Television Corp., dba KHOU-TV; Storer Television Sales, Inc., dba WAGA-TV and KCST-TV; and Bay City Television, Inc., dba XETV.

As used in this opinion, the word "stations" refers to independent, rather than network, television stations.

[2] Former Code of Civil Procedure section 2033 applies here because the new statute became effective after the conclusion of the trial in this case.

Former section 2033 provided in pertinent part: "Upon failure of a party served with requests for admissions pursuant to this section either to answer or to file objections within the period as designated in the request or as extended by the court, the party making the request may serve upon the other party a notice in writing by certified or registered mail, return receipt requested, notifying the party so served that the genuineness of the documents or the truth of the facts has been deemed admitted. Once the notice is served, the party upon whom the notice is served shall not have the right to apply for relief under the provisions of Section 473 unless a motion requesting relief is served and filed within 30 days after service of the notice."

Plaintiffs filed a notice of deemed admissions after defendant had failed to respond to a set of requests for admissions concerning the industry custom to hold advertising agencies liable for payment of air time. Defendant did not object to the admission of the notice of deemed admissions, although it had unsuccessfully tried twice before trial to have the notice of deemed admissions vacated. (Code Civ. Proc., §§ 473, 1008.)

Although plaintiffs informed the trial court they were relying on the admissions to prove defendant's contractual liability for payment of air time, plaintiffs also put on evidence during their case in chief to rebut any contrary evidence defendant might later produce. Plaintiffs put their rebuttal evidence on prematurely because their expert witness, Marvin Schrager, had to be in New York later during the trial. With defendant's acquiescence, Schrager testified out of order, subject to defendant's motion to strike on the ground his testimony lacked relevance.

At the time of the trial, Schrager had been working for 13 years as a credit manager for John Blair & Company, a firm representing approximately 135 television stations and 300 radio stations. Schrager had been doing that line of work in the television and radio industry for 26 years. Because of his work, Schrager was thoroughly familiar with the manner in which the industry received payment for air time contracted by an advertising agency on behalf of its client. As long as he had been in the industry, it had been "standard practice" for independent television stations to hold advertising agencies liable for payment absent other prior arrangements. After running the television spots, the stations would customarily bill the agencies. The agencies would collect payment from their client advertisers and, after deducting a standard commission of 15 percent of the total bill, would forward payment to the stations.

In support of his opinion on custom, Schrager mentioned the AAAA liability clause appearing "on the standard AAAA contract and printed on most . . . representatives' confirmations which go to the [advertising] agency." The clause held advertising agencies liable, unless stated otherwise, and, according to Schrager, had been adopted by over 90 percent of the country's independent television stations. Because of the standard use of the AAAA contract between stations and advertising agencies, "any advertising agency," even one not a member of AAAA, would be familiar with the AAAA contract.

Schrager explained that if an advertising agency gave prior notice of nonliability, the station's representative firm would check the client advertiser's credit and might require the advertiser to submit a letter of responsibility. If such prior arrangements were made, the stations would mail the bill for air time to the advertiser, "in care of" the agency.

The documentary evidence showed that five plaintiff stations (WVUE, KHOU-TV, KFMB-TV, XETV-TV, and WCIX) had incorporated the AAAA liability clause in the "spot confirmations" sent to defendant to confirm the scheduling of television spots for National Service Corporation,

defendant's client advertiser. Two other plaintiff stations (KCST-TV and WAGA) mentioned in their "television contracts" that defendant was solely liable for payment, unless it became insolvent, at which time its client advertiser would also be liable. Plaintiff station KTLA's "television contract" stated that defendant was jointly and severally liable for payment in the event of its client advertiser's default. Only four plaintiff stations (KPRC, WDVM, WJLA, and KHTV) failed to produce evidence of the liability clause included in their spot confirmations.

David Atha (defendant's media director, secretary and treasurer) and David Mills (defendant's executive vice-president) testified in plaintiffs' case in chief under Evidence Code section 776.[3] Both denied any knowledge of the terms of the AAAA liability clause. Atha could not recall that defendant ever gave stations advance notice of defendant's nonliability for payment. Mills did not remember ever applying for credit on defendant's behalf.

Although Atha and Mills denied knowledge of the industry custom, defendant's contract with National Service Corporation, which Mills had signed, established otherwise. That contract, which defendant drafted, stated in pertinent part: "There are two fundamental principles upon which our financial relationship must be based. The first is that we [defendant] shall be responsible for financing our own services, but not for financing the advertising of our clients. *The second is that we are held responsible for payment of purchases made in your behalf, as your agent. To hold to these principles, it is essential that we collect from you in time to pay media and suppliers promptly.* Therefore, we will bill, whenever possible, all outside purchases before publication, insertion or delivery date, in order to have funds available for prompt payment upon presentation of invoices from media and suppliers." (Italics added.)

During the morning session of the second day of trial, plaintiffs requested a continuance to the afternoon, when two witnesses who had "prior schedules" would be available. The court denied the request. Plaintiffs then rested. Before presenting its defense, defendant moved to strike Schrager's testimony for lack of foundation and relevance. The court denied the motion.

---

[3] Evidence Code section 776 provides in relevant part: "(a) A party to the record of any civil action, or a person identified with such a party, may be called and examined as if under cross-examination by any adverse party at any time during the presentation of evidence by the party calling the witness."

## B. *Defense Case*

Defendant agency denied personal liability under Civil Code section 2343. That section holds an agent liable to a third party in any of the following situations: "1. When, with his consent, credit is given to him personally in a transaction; [¶] 2. When he enters into a written contract in the name of his principal, without believing in good faith, that he has authority to do so; or, [¶] 3. When his acts are wrongful in their nature." ■ ■ ■ ■ Defendant argued the only relevant provision was that set forth in paragraph 1, but that it was inapplicable because defendant had ordered the air time as the disclosed principal of its client advertiser, and therefore was not liable.[4] In support of defendant's position, David Atha, defendant's media director, secretary and treasurer, testified defendant always informed the television stations of its client advertiser's identity. Atha claimed he knew nothing about any industry custom requiring advertising agencies to pay for air time when their client advertisers failed to pay.

However, on cross-examination Atha acknowledged it was not the first time defendant had been advised of its liability for payment of air time. He recalled a prior incident where one of defendant's other clients, Aurora, had declared bankruptcy and stations informed Atha that defendant remained liable for payment.

David Mills, defendant's vice-president, sought to explain his understanding of the National Service Corporation contract regarding defendant's liability for payment. The court excluded this testimony on the ground that Mills's subjective, undisclosed intent in signing the contract was irrelevant.

After three of defendant's four witnesses had testified, defendant advised the court that its fourth witness, Joan Merit, would not be available until the next morning. Defendant's attorney represented that Merit's testimony was necessary to rebut Schrager's testimony on industry custom. Defendant explained that Merit was not scheduled to testify that afternoon because defendant had not anticipated plaintiffs would rest that morning, and because Merit was moving from her apartment that day. The trial court pointed out that defendant should have had Merit on call or should have subpoenaed her, and refused to continue the trial. Defendant then rested.

---

[4] Generally, if at the time the contract is made the identity of the principal is disclosed to the third party, the latter is presumed to have contracted with the principal unless at the time of making the contract it chooses to hold the agent solely liable. (*Clifton Cattle Co.* v. *Thompson* (1974) 43 Cal.App.3d 11, 17 [117 Cal.Rptr. 500].)

## C. Trial Court's Ruling

After taking the matter under submission, the trial court found in favor of plaintiffs. Defendant requested a statement of decision for each plaintiff station concerning, among other things, whether defendant had ordered air time as an agent of a disclosed principal, and whether defendant had consented to an extension of credit in its name. After overruling defendant's objections and rejecting defendant's proposed statement of decision, the trial court accepted and entered plaintiffs' proposed statement of decision.

The statement of decision included the following factual findings: (1) defendant's deemed admission established that plaintiffs' practice was to extend credit to the advertising agency which had placed the order for air time; (2) defendant had both constructive and actual notice of the custom holding it liable for payment of air time absent other arrangements; (3) pursuant to custom, plaintiffs extended credit to defendant, which had not given advance notice of its nonliability; and, (4) defendant did not inform plaintiffs it was acting as the agent of a disclosed principal. As to the latter finding, the court explained: "In order for a party to a transaction to be deemed acting as an agent of a disclosed principal such agency must be communicated in a manner that causes it to appear from the transaction that the parties intend to bind only the principal and not the agent."

The court concluded defendant was liable for payment of air time based on the custom in the industry and defendant's failure to notify plaintiffs of its nonliability.

### ISSUES ON APPEAL

Defendant contends it was erroneously required to prove it had bound only its principal to the contracts for air time. Defendant argues the judgment must be reversed because plaintiffs failed to prove the existence of an industry custom requiring advertising agencies to pay for air time. Defendant asserts its deemed admission on custom was inadmissible because the trial court should have granted it relief from default, and because plaintiffs had misplaced the statutory warning on the request for admissions. Defendant also contends the judgment was not supported by substantial evidence.

In addition, defendant claims the court committed reversible error in (1) refusing to strike Schrager's testimony; (2) refusing to continue the trial so prospective defense witness Merit could testify on custom; (3) refusing to allow Mills, defendant's vice-president, to explain the terms of the National

Service Corporation contract; and (4) issuing an erroneous and inadequate statement of decision.

## DISCUSSION

### A. *Industry Custom*

██ Citing *Marks* v. *Rucker & Co.* (1921) 53 Cal.App. 568, 570 [200 P. 655], defendant argues that where, as here, a contracting party knows the identity of the other party's principal, the contract is presumed to bind only the principal and not the agent. Defendant contends the court applied an erroneous legal standard in concluding that an agent must communicate its nonliability to the third party "in a manner that causes it to appear from the transaction that the parties intend to bind only the principal and not the agent." We disagree.

██ The mere fact a contracting party knew the identity of the other party's principal does not necessarily establish, as a matter of law, that the agent was not a party to the contract. (Rest.2d Agency, § 320, com. c, p. 68; see *Clark Advertising Agcy.* v. *Avco Broadcasting* (1978) 178 Ind.App. 451 [383 N.E.2d 353, 355].) It merely permits an inference to that effect, which may be overcome by proving other facts connected with the transaction, including custom and usage. (Rest.2d Agency, § 320, com. c, p. 68.)

██ Evidence of custom or standard practice is admissible to interpret the terms of a contract and to imply terms when no contrary intent is apparent from the other terms of the contract. (*Wise* v. *Reeve Electronics, Inc.* (1960) 183 Cal.App.2d 4, 8-9 [6 Cal.Rptr. 587].) Generally, when there is a custom in a certain industry, those engaged in that industry are deemed to have contracted in reference to that practice unless the contrary appears. (*Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 482 [289 P.2d 785, 49 A.L.R.2d 496].) The prevailing industry custom binds those engaged in the business even though there is no specific proof that the particular party to the litigation knew of the custom. (*Peskin* v. *Squires* (1957) 156 Cal.App.2d 240, 248 [319 P.2d 405].) The industry practice becomes a part of the contract, and the evidence of such custom is admissible to supply a missing term or to aid in interpretation if it does not alter or vary the terms of the contract. (*Cal. Lettuce Growers* v. *Union Sugar Co., supra,* at p. 482.)

██ Here, the industry custom and plaintiffs' adherence to it were established at trial by means of defendant's deemed admissions. (Former Code Civ. Proc., § 2033.) When a fact is deemed admitted, it is laid to rest

so it will not have to be tried. (*Jahn* v. *Brickey* (1985) 168 Cal.App.3d 399, 404 [214 Cal.Rptr. 119].)

As mentioned earlier in our discussion of the facts, defendant was deemed to have admitted that independent television stations customarily look to the advertising agency for payment of air time, absent other prior arrangements. Defendant was further deemed to have admitted that plaintiffs followed this custom in each of the transactions involved here, and that no other prior arrangements for payment had been made. These admissions, together with defendant's actual and constructive knowledge of the custom, rebutted the presumption of nonliability. Defendant could have prevailed only if it had communicated its nonliability to plaintiffs. The court therefore did not err in requiring defendant to establish it had given plaintiffs notice of its nonliability.

### B. *Defendant's Admissions*

Defendant claims plaintiffs failed to overcome the presumption of nonliability because the trial court should have vacated the notice of deemed admissions and excluded the deemed admissions at trial.

Defendant moved to vacate plaintiffs' notice of deemed admissions under Code of Civil Procedure section 473. That section provides: "The court may, upon such terms as may be just, relieve a party or his or her legal representative from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect." The motion was based on the mistaken belief by defense counsel that he had previously responded to the request for admissions. The trial court denied the motion as untimely.

Former section 2033 of the Code of Civil Procedure required the party moving for relief from default under section 473 of that code to bring the motion within 30 days after service of the notice of deemed admissions. The 30-day period started to run on the day notice was given "by certified or registered mail, return receipt requested . . . ." (Code Civ. Proc., § 2033, subd. (a); *Enfantino* v. *Superior Court* (1984) 162 Cal.App.3d 1110, 1111 [208 Cal.Rptr. 829].) Here, plaintiffs sent defendant a "Notice of Admission of Facts" by certified mail, return receipt requested, on August 6, 1985. Defendant did not move for relief until September 13, 1985, well beyond the statutory 30-day period, which began to run on August 6, 1985.

Mark Brifman, defendant's attorney, claimed that, although his office had "apparently received" plaintiffs' "Notice of Admission of Facts" on

August 7, 1985, he did not see the notice for almost a week because it had been stapled to the back of a settlement demand. However, Raoul Roth, plaintiffs' attorney, denied the notice had been stapled to the back of a settlement demand.

Brifman also claimed his motion for relief was timely because Roth had granted defendant an extension of time to respond to the request for admissions. But Roth denied granting an extension, and presented a letter exhibit which supported his position.[5]

The trial court denied defendant's motion for relief from default. Defendant moved for reconsideration under Code of Civil Procedure section 1008.[6] The motion was based on the newly asserted ground, supported by declaration (Code Civ. Proc., § 1008, subd. (b)), that the statutory 30-day period did not start to run until the actual date on which defendant received plaintiffs' "Notice of Admission of Facts." Defendant asserted plaintiffs' attorney had mailed the notice to defense counsel's old address, even though plaintiffs' attorney had actual knowledge of the new address. Although the notice was sent on August 6, 1985, defense counsel did not receive it until August 14, 1985, because of the incorrect address. Therefore, defendant argued, the 30-day statutory period did not commence until August 14, 1985, the date of defendant's actual receipt of the notice, and having filed its motion for relief on September 13, 1985, the motion was timely.

Subdivision (a) of Code of Civil Procedure section 1013 provides that notice served by mail must be addressed to the person on whom it is to be served at his office address as last given by him on any document filed in the cause and served on the party making service by mail. According to the declaration of plaintiffs' counsel, his office mailed the notice to defense counsel's address as shown on the last pleading received by plaintiffs, which corresponded with the address stored in Roth's office computer. The record supports the trial court's finding that the notice of deemed admissions had

---

[5] Roth's letter to Brifman stated in part: "I do believe you are in error. I believe what I told you when you asked about the default in response was that after you send me what purports to be your client's response, I will discuss with you whether or not I will require you to make a motion to set aside the default. I did not grant you an extension of time to respond. I feel that granting such an extension after default would be malpractice without other consideration."

[6] Subdivision (a) of section 1008 of the Code of Civil Procedure provides: "When an application for an order has been made to a judge, or to the court, and refused in whole or in part, . . . any party affected by the order may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts may, make application to the same judge who made the order, to reconsider the matter and modify, amend or revoke the prior order."

been properly addressed, and that service was complete at the time of mailing. (Code Civ. Proc., § 1013, subd. (a).)

Defendant's motion for reconsideration also contended the requests for admissions were void because plaintiffs had misplaced the statutory warning. This argument, raised for the first time in the motion for reconsideration, failed to meet the requirements of Code of Civil Procedure section 1008 since it was not based on a new fact and could have been raised in the motion for relief filed earlier.

■ In any event, the statutory warning was not misplaced. The request for admissions consisted of a half page of instructions, followed by 55 requests for admissions and a separate section of 4 interrogatories. The statutory warning came after the interrogatories, above the signature line. We reject defendant's claim that the warning was misplaced because it followed the interrogatories.

In *Freshman, Mulvaney, Comsky, Kahan & Deutsch* v. *Superior Court* (1985) 173 Cal.App.3d 223 [218 Cal.Rptr. 533], this court considered and rejected a similar contention. In *Freshman,* there were 155 requests for admissions plus subparts, and the statutory warning was placed in 3 different places: first, in the second paragraph of the first page at the end of the request but before the instructions; second, at the end of the 155 requests for admissions plus subparts; and third, as here, at the very end of the document but after the interrogatories. (*Id.* at p. 228.) We held that the first warning was misplaced; that the second warning was arguably properly placed; and that the third warning, "being at the very end of the document and after the admissions, should certainly comply with the requirement." (*Id.* at p. 231.)

In *Freshman,* we distinguished *Hansen* v. *Superior Court* (1983) 149 Cal.App.3d 823, 829 [197 Cal.Rptr. 175], where the court found that the commingled requests for admissions and interrogatories were unnecessarily confusing and impermissibly tended to mislead the recipient. (*Freshman, supra,* 173 Cal.App.3d at p. 231.) This case is also distinguishable from *Hansen* because, as in *Freshman,* the interrogatories were clearly separated from the requests for admissions. (*Ibid.*) We do not see how the separate section of interrogatories could have confused or misled defendant. The warning, placed at the very end of the document and after the admissions, complied with the statutory requirement.

For the reasons set forth above, we conclude the trial court did not abuse its discretion in denying both the motion for relief from default under Code

of Civil Procedure section 473, and the motion for reconsideration under Code of Civil Procedure section 1008.

### C. *Sufficiency of the Evidence*

Defendant asserts there is insufficient evidence to support the judgment.

In resolving the issue of sufficiency of the evidence, we must view all factual matters most favorably to the prevailing party and in support of the judgment. (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].) All conflicts are resolved in favor of the respondent. (*Ibid.*) We will not reverse the judgment if there is any substantial evidence, contradicted or uncontradicted, to support the trial court's factual findings. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

As discussed earlier, defendant was deemed to have admitted that advertising agencies are customarily liable for payment of air time and that plaintiffs followed this custom. The admission removed the issue from the trial. (*Jahn* v. *Brickey, supra,* 168 Cal.App.3d at p. 404.) Joan Merit, whom defendant intended to call as an expert witness on the issue of custom, did not testify. Therefore, the deemed admission remained uncontroverted.

Moreover, the record clearly supports the trial court's finding of defendant's actual knowledge of custom. Although defense witnesses Atha and Mills denied knowledge of the industry custom, defendant acknowledged in the National Service Corporation contract that, as the latter's agent, defendant would be liable for payment of purchases made on National Service Corporation's behalf. In addition, Atha admitted on cross-examination he knew of a prior incident where, notwithstanding the bankruptcy of defendant's client Aurora, the stations held defendant responsible for payment of air time Aurora had on the stations.

Defendant's failure to warn plaintiffs of its nonliability and defendant's knowledge of the custom requiring advertising agencies to pay for air time were fatal to its defense.

### D. *Motion to Strike*

Defendant claims Schrager's testimony should have been stricken because he lacked the personal experience or actual knowledge to testify as an expert witness. (Evid. Code, § 801.) A review of the record indicates Schrager's testimony was unnecessary to the judgment and therefore its

admission could not have prejudiced defendant. (Cal. Const., art. VI, § 13; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 324-326, pp. 334-336.) Although the trial court may have relied on Schrager's testimony in concluding defendant had constructive knowledge of the industry custom, that finding was superfluous since the trial court also found defendant had actual knowledge of the industry custom.

### E.  *Continuance of Trial*

■  After three of its four witnesses had testified, defendant asked to recess that afternoon and continue the trial to the next morning to enable it to call Joan Merit, its fourth witness, as an expert to rebut the testimony of Schrager, who had testified as plaintiffs' expert witness on the issue of custom. Defendant explained Merit was moving that afternoon and would not be available until the next morning. The trial court refused to continue the trial, noting defendant could have subpoenaed Merit or taken other steps to ensure her presence. As the court said, "If witnesses were permitted to come in at their convenience, why, we might as well close the doors and go home, because none of them would find it convenient." Defendant contends the trial court abused its discretion in not granting the continuance.

Code of Civil Procedure section 595.4 provides in relevant part that a "motion to postpone a trial on the ground of the absence of evidence can only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it." A trial court has broad discretion in ruling on a motion for a continuance. (*In re Marriage of Johnson* (1982) 134 Cal.App.3d 148, 154 [184 Cal.Rptr. 444].) It is the duty of the trial court to vigorously insist upon cases being heard and decided in the most timely manner possible, unless there are compelling reasons to the contrary. (*Mann* v. *Pacific Greyhound Lines* (1949) 92 Cal.App.2d 439, 446 [207 P.2d 105].)

The record supports the trial court's implied finding of a lack of due diligence on the part of defendant. The trial court noted defense counsel could have subpoenaed Merit to ensure her availability. Also, since counsel knew at the noon recess it would need Merit's testimony that afternoon, he could and should have made arrangements to have her "on call" for that afternoon. Instead, defense counsel readily acknowledged he had failed to make such arrangements. As he said, "We had planned on having her tomorrow, so I told her she could go ahead and move today. I don't have any way to get her here." Under the circumstances, the trial court did not abuse its discretion in denying the request for a continuance. Moreover, as we noted earlier, since defendant was deemed to have admitted the issue of

custom, defendant could no longer litigate that point. (*Jahn* v. *Brickey,* *supra,* 168 Cal.App.3d at p. 404.)

F. *The National Service Corporation Contract*

Defendant asserts the trial court erred in refusing to allow Mills, defendant's executive vice-president, to explain the statement in the National Service Corporation contract that defendant would be "held responsible for payment of purchases made in [National Service Corporation's] behalf, as [its] agent." ■ We agree with the trial court that Mills's subjective, undisclosed intent was immaterial. (*Ribiero* v. *Dotson* (1960) 187 Cal.App.2d 819, 821 [9 Cal.Rptr. 909].) The issue was not whether defendant was authorized to make National Service Corporation solely liable for payment of air time. Rather, since the industry custom had been deemed admitted, the issue was whether defendant had communicated its nonliability to plaintiffs when it placed the orders for air time.

G. *The Statement of Decision*

Defendant contends the trial court erred in failing to make a requested finding on an issue of fact defendant deemed material, namely, whether defendant had acted as an agent for a disclosed principal in ordering air time.

■ A trial court must make findings on "material subsidiary issues of fact" when a party makes such a request or informs the court of its failure to make such findings before the entry of judgment. (Code Civ. Proc., § 634; *Danning* v. *Bank of America* (1984) 151 Cal.App.3d 961, 972 [199 Cal.Rptr. 163.) " 'A "material" issue of fact is one which is relevant and essential to the judgment and closely and directly related to the trial court's determination of the ultimate issue in the case.' [Citation.]" (*Lynch* v. *Cook* (1983) 148 Cal.App.3d 1072, 1080 [196 Cal.Rptr. 544].)

As discussed earlier, plaintiffs' knowledge of the identity of defendant's client, National Service Corporation, created only an inference of defendant's nonliability. Plaintiffs overcame that inference by establishing defendant's liability pursuant to custom. The trial court expressly found that defendant knew of the industry custom holding it liable for payment of air time absent other arrangements, and that based on that custom plaintiffs had extended credit to defendant, which failed to notify plaintiffs in advance of its nonliability. The court also found that defendant never informed plaintiffs it was acting solely as the agent of a disclosed principal. Based on these findings, among others, the trial court determined the ultimate issue in

the case: it found defendant liable to plaintiffs for the payment of air time on behalf of its client, National Service Corporation. Under the circumstances, defendant's requested finding was neither relevant nor essential to the judgment. Therefore, the trial court's failure to make such a finding could not have prejudiced defendant.

Defendant also contends the "blanket form" of the statement of decision was improper because defendant had requested a separate statement of decision for each plaintiff. However, the trial court based its finding of custom primarily on defendant's deemed admission, and not on separate pieces of evidence concerning each station's contractual agreement with defendant. The statement of decision was neither confusing nor inadequate, and amply supports the judgment.

## DISPOSITION

The judgment is affirmed. Plaintiffs are entitled to recover costs on appeal.

Ashby, Acting P. J., and Boren, J., concurred.