TOLEDO BROADCASTING, INC. ET AL.
*v.* STOCKTON, WEST
& BURKHART, INC.

(Nos. 89-CV-22884, 89-CV-22894,
89-CV-21245
and 89-CV-16441—Decided
May 30, 1990.)

Hamilton County Municipal Court.

*Matthew T. MacLeid,* for plaintiffs.
*Charles M. Meyer,* for defendant.

MARK P. PAINTER, J. This matter comes to the court on the defendant's motion to dismiss. Since the parties submitted affidavits and other evidence outside the pleadings, the motion to dismiss will accordingly be treated as one for summary judgment. For purposes of this motion and by order of this court, the four cases have been consolidated. Much of the factual picture is undisputed.

Plaintiff Dayton Newspapers, Inc. is the owner and operator of a newspaper published in Dayton, Ohio. Plaintiff WUPW TV-36 is the owner and operator of a television station in Toledo, Ohio. Plaintiff Booth Broadcasting Company is the owner and operator of a radio station in Toledo, Ohio. Plaintiff Toledo Broadcasting, Inc. is the owner and operator of a radio station in Toledo, Ohio. Defendant Stockton, West & Burkhart, Inc. ("Stockton") is an advertising agency that places print advertising in newspapers and procures air time on radio and television stations in order to advertise products of the advertiser. SIS Corporation ("SIS"), not named as defendant herein, is primarily engaged in the operation of a chain of Sisters Chicken & Biscuits Restaurants.

1

On January 7, 1987, SIS and Stockton entered into a contract whereby Stockton was, among other things, to procure ad space and air time for the advertisement of Sisters Chicken & Biscuits Restaurants for or on behalf of SIS. Stockton did procure such ad space and air time for SIS from the plaintiffs, and the plaintiffs knew that such air time and ad space were for or on behalf of SIS. Stockton did not submit any credit applications to at least two of the plaintiffs, Toledo Broadcasting, Inc. and WUPW TV-36. As is customary, once Stockton procured air time or ad space for SIS, Stockton would send SIS an invoice. When SIS remitted the amount due, Stockton would issue a check to the newspaper, radio or television station after deducting its commission. Because Stockton never received payment from SIS with respect to the amounts claimed by plaintiffs, no payments were remitted to plaintiffs. SIS had since filed for Chapter 11 reorganization.

Plaintiffs then brought this action against defendant Stockton to collect on the delinquent accounts for advertising services rendered. Defendant Stockton argues that in its dealings with the plaintiffs, it acted as an agent for a disclosed principal and, therefore, is not liable for the cost of the advertisements. In support of this agency relationship, Stockton contends it was acting at the direction of and under the control of SIS when it procured air time and ad space. Stockton also contends that there was nothing in writing between plaintiffs and Stockton whereby Stockton agreed to be liable for the obligations of SIS. The plaintiffs, on the other hand, contend that advertising agencies within the advertising industry are independent contractors and have no relationship to the word "agent" as used in the law of principal and agent.

While there is no dispositive Ohio precedent, other jurisdictions have considered this issue. In *Midwest Television, Inc.* v. *Scott, Lancaster, Mills & Atha, Inc.* (1988), 205 Cal. App. 3d 442, 252 Cal. Rptr. 573, several independent television stations brought an action against an advertising agency to recover amounts due for air time provided for the agency's client. At trial, plaintiffs claimed that defendant was a party to the contracts for air time because defendant had failed to give the stations prior notice of its nonliability. Defendant's admissions established that stations customarily hold the advertising agency liable for payment of air time unless they are given prior notice of the agency's nonliability. The documentary evidence showed that five of the plaintiff stations had incorporated American Association of Advertising Agencies ("AAAA") liability clauses in the "spot confirmations" sent to defendant, which held advertising agencies liable unless stated otherwise. Defendant maintained that it was not a party to the contracts for air time because it had merely acted as the agent of its disclosed principal.

The court of appeals, in affirming the judgment of the trial court in favor of the television stations, held that the evidence established that the industry custom for television stations was to hold advertising agencies liable for purchase of air time unless they received specific notice of nonliability, even though they were aware that the agency was acting for a disclosed principal. "The mere fact a contracting party knew the identity of the other party's principal does not necessarily establish, as a matter of law, that the agency was not a party to the contract. (Rest. 2d Agency, § 320, com. c, p. 68; see *Clark Advertising Agcy.* v. *Avco Broadcasting* (1978) 178 Ind. App. 451 [383 N.E. 2d 353, 355].) It merely permits an inference to that effect, which may be overcome by proving other

facts connected with the transaction, including custom and usage. (Rest. 2d Agency, § 320, com. c, p. 68.)" *Id.* at 451, 252 Cal. Rptr. at 579.

Since defendant was deemed to have admitted that independent television stations customarily look to the advertising agency for payment of air time, and that each plaintiff station followed this custom, "* * * [t]hese admissions, together with defendant's actual and constructive knowledge of the custom, rebutted the presumption of nonliability. Defendant could have prevailed only if it had communicated its nonliability to plaintiffs. * * *" *Id.* at 452, 252 Cal. Rptr. at 579.

Likewise, in *Clark Advertising Agency, Inc.* v. *Avco Broadcasting Corp.* (1978), 178 Ind. App. 451, 383 N.E. 2d 353, an owner of a television station sued an advertising agency to recover for commercials broadcast for a disclosed client. The advertising agency argued that where a person is known to be contracting as an agent of a disclosed principal, such contract, if within the agent's authority, binds the principal only. The court of appeals in response stated: "* * * Proof of these facts, however, does not necessarily establish, as a matter of law, that the agent is not a party to the contract. Rather, it merely permits an inference to that effect, which may be overcome not only by express language, but by custom, usage and the prior course of dealings between the parties. *Restatement, Second, Agency* § 320; *Seavy, Law of Agency* § 70D (1964)." (Footnote omitted.) *Id.* at 454, 383 N.E. 2d at 355. See, also, *Edcom Productions, Inc.* v. *Wattenmaker Advertising, Inc.* (Dec. 23, 1982), Cuyahoga App. No. 44829, unreported.

In affirming judgment for the plaintiff, the court of appeals noted that the evidence sufficiently established the existence of a usage of trade, and that the advertising agency acquiesced in such usage through a prior course of dealings. Such evidence included "spot television" contracts between the broadcaster and advertising agency and AAAA-approved "conditions" holding the advertising agency liable. Thus, the trial court's decision that the advertising agency was a party to the contract was supported by evidence. However, the court noted in regard to usages and the interpretation of contracts, the question becomes one of fact to be determined as any other question of fact. *Id.* at 455-456, 383 N.E. 2d at 356.

Additionally, in *New York Times Co.* v. *Glynn-Palmer Associates, Inc.* (1988), 138 Misc. 2d 862, 525 N.Y. Supp. 2d 565, a newspaper sued an advertising agency for the net amount of an unpaid bill for advertisement. The defendant argues that at all times in dealing with The Times, it was acting as an agent for a disclosed principal. The Times, to the contrary, contended that it dealt only with the agency, had no knowledge of the client's creditworthiness and, according to the custom and usage in the industry, the agent should be liable. The court stated that "[w]here the identity of the principal is disclosed, there is a presumption that credit is extended only to the principal and not to the agent * * *." *Id.* at 865, 525 N.Y. Supp. 2d at 568. The court noted, therefore, that the party asserting that the agent is bound must prove that fact by "clear and explicit" evidence. The Times failed to meet this burden since the documents involved in the transaction did not state that the agent was liable. *Id.*

In the present case, the fact that the plaintiffs were fully aware that Stockton was procuring such air time and ad space on behalf of its client, SIS, does not establish as a matter of law that Stockton was not a party to the contract. Rather, it merely permits an inference to that effect. This inference may be overcome by express language in any contract the plaintiffs

4

may have with Stockton, and/or by industry custom and usage, and/or the prior course of dealings between the parties.

Here, the affidavits and other evidentiary documents demonstrate that there are genuine issues of material fact with respect to whether there was a provision in a contract holding Stockton, the advertising agency, liable. The affidavit of the President of Stockton states there was no such contract. On the other hand, answers to the defendant's first set of interrogatories state that the plaintiffs contracted with the defendant, and that, according to accepted custom and usage in the advertising industry, the plaintiffs looked to the defendant for payment as an independent contractor, not under the control of the advertiser.

Accordingly, the defendant's motion for summary judgment is denied.

*Motion denied.*