Filed 3/6/13  Weinbach v. Windwings Productions CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT D. WEINBACH et al.,<br><br>Cross-complainants and Appellants,<br><br>v.<br><br>WINDWINGS PRODUCTIONS, LLC,<br>et al.,<br><br>Cross-defendants and Respondents. | B236490<br><br>(Los Angeles County<br>Super. Ct. No. SC101722) |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Linda K. Lefkowitz, Judge.  Affirmed.

Law Offices of Becky Walker James, Becky Walker James and

Kathryn Lohmeyer for Cross-complainants and Appellants.

Leopold, Petrich & Smith, Louis P. Petrich, Robert S. Gutierrez and

Elizabeth L. Schilken for Cross-defendants and Respondents.

Robert D. Weinbach and Cyclone Productions, Inc. (Cyclone), appeal a judgment dismissing their cross-complaint against Windwings Prodcutions, Inc. (Windwings), and Kim Productions LLC (Kim). The issues on appeal concern the interpretation of a provision in a settlement agreement and whether extrinsic evidence created a question of fact for the jury to decide in connection with that interpretation. We conclude that the extrinsic evidence was not in conflict and the trial court properly considered the evidence and interpreted the settlement agreement as a matter of law. We also agree with the trial court's interpretation of the agreement. We therefore will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

1.      *Factual Background*

Cyclone is a motion picture production and distribution company. Weinbach is its president and owner.

Jim Thompson wrote a novel, The Killer Inside Me, first published in 1952. Weinbach wrote a screenplay based on the novel. Cyclone became the sole owner of all worldwide motion picture and television rights to the novel in 1974.

Cyclone and Weinbach assigned all of their rights to the novel to J. S. Company, Inc. (J. S. Company), in 1974. In the assignment, Cyclone and Weinbach warranted that they were "the sole and exclusive owner of all right, title and interest in and to the Novel and the screenplay . . . ." They assigned to J. S. Company "a 100% ownership interest in and to all of the right, title and interest of the Seller" in the novel and the screenplay. Cyclone contemporaneously entered into a Memorandum of Agreement

2

with an affiliate of J. S. Company, Tekim, Ltd. (Tekim), in which Tekim agreed to produce a motion picture based on the novel using the Weinbach screenplay. Tekim agreed that Weinbach would serve as the director and a producer of the movie. Cyclone and Weinbach also executed an Assignment of All Rights assigning to J. S. Company "the entire, worldwide, absolute, unqualified, sole and exclusive common law rights" to the Weinbach screenplay.

Tekim, however, terminated Weinbach's services as director and producer after only a few days of filming. Cyclone and Weinbach filed a complaint against Tekim and others in November 1974, and that same month Tekim commenced a separate action against Cyclone and others. Meanwhile, Tekim released a motion picture entitled The Killer Inside Me in 1975. The litigation eventually resulted in a settlement agreement executed in 1976 by and between Cyclone and Weinbach, on the one hand, and Tekim, J. S. Productions, Inc., and others on the other. Each side agreed to dismiss its lawsuit with prejudice. Tekim also granted Cyclone and Weinbach "all rights and licenses necessary to produce, distribute and otherwise exploit for its own account a remake of the motion picture 'The Killer Inside Me' . . . . "

Paragraph 3(g) of the 1976 settlement agreement stated:

"To the full extent that Tekim has such rights, (and Tekim agrees that it has not disposed of any rights acquired from Cyclone) Tekim hereby grants to Cyclone [defined to include Cyclone and Weinbach] all rights and licenses necessary to produce, distribute and otherwise exploit for its own account a remake of the motion picture 'The Killer Inside Me' based upon the literary material acquired by Cyclone from Edward

3

Mann, Robert Chamblee, Ed Waters, Jim Thompson and Robert D. Weinbach as distinguished from any literary material acquired by Tekim separate and apart from that obtained under the agreement with Cyclone, following termination of the existing distribution agreement, as amended, with National General Pictures Corporation if the said motion picture is released under said distribution agreement with such company, and if not, then following seven (7) years if a third party or Tekim distributes the said motion picture, such seven (7) year period to commence as of the date of first general release of said motion picture or one year after execution of this Agreement, whichever is earlier."

Jim Thompson died in 1977, and all domestic rights to the novel reverted to his estate by operation of law. M.U.S.E. Picture Productions Holding Corp. II purchased from Thompson's heirs in 1994 an option to purchase the domestic rights to the novel. A dispute arose concerning the rights to the novel, leading to (1) a complaint filed in the superior court in June 1995 and a first amended complaint filed in February 1996 by Weinbach and Cyclone against M.U.S.E. Productions, Inc., M.U.S.E. Picture Productions Holding Corp. II (collectively M.U.S.E.), Chris Hanley and others; and (2) a complaint filed in the federal district court in October 1995 by the Thompson heirs against Weinbach and Cyclone. The superior court in the first action found that Weinbach and Cyclone owned no domestic rights to the novel and entered a judgment for the defendants in 1996. The Court of Appeal affirmed the judgment. M.U.S.E. then sued Weinbach and Cyclone for malicious prosecution.

Weinbach and Cyclone entered into a settlement agreement with M.U.S.E. and Hanley in May 1997 in which Weinbach and M.U.S.E. Productions, Inc., agreed to use their best efforts to obtain financing to produce a motion picture based on the novel, the parties agreed to dismiss with prejudice their pending lawsuits against each other if they obtained a commitment for full financing, and Weinbach and M.U.S.E. Productions, Inc., agreed to form a joint venture to produce a film based on the novel and to contribute to the joint venture all of their respective rights to the novel.

The joint venture failed to produce a film after several years. Tekim, J. S. Productions, Inc., and others in January 2009 assigned to Windwings by quitclaim any and all rights that they had to the novel. The Thompson heirs sold Windwings an option to purchase all domestic motion picture and television rights to the novel, and Windwings subsequently exercised that option. M.U.S.E. also assigned to Windwings its rights to a screenplay based on the novel. Windwings then granted Kim a nonexclusive right to produce a motion picture based on the novel. Kim produced a motion picture remake entitled The Killer Inside Me in 2010.

2.     *Trial Court Proceedings*

M.U.S.E. and Hanley filed a complaint against Weinbach and Cyclone in February 2009 alleging that Weinbach and Cyclone misrepresented the nature and extent of the international motion picture and television rights to the novel owned by the defendants. The plaintiffs allege that Weinbach and Cyclone interfered with the plaintiffs' efforts to produce a remake of the 1975 motion picture and failed to cooperate in a joint venture as required under the terms of the 1997 settlement

5

agreement.  M.U.S.E. and Hanley allege counts against Weinbach and Cyclone for declaratory relief, intentional and negligent misrepresentation, intentional interference with prospective business advantage, breach of contract, malicious prosecution and other counts.  They allege in their declaratory relief count that Weinbach and Cyclone claim to own the exclusive international motion picture and television rights to the novel, while M.U.S.E. and Hanley claim that the rights owned by Weinbach and Cyclone are nonexclusive.

Weinbach and Cyclone filed a cross-complaint and filed a first amended cross-complaint against M.U.S.E., Hanley, Windwings and Kim in November 2009. They allege that M.U.S.E. breached the 1997 settlement agreement in connection with the 2010 remake of The Killer Inside Me.  They allege several counts against only M.U.S.E. and Hanley; counts against all cross-defendants for conversion, declaratory relief and an injunction; and counts against Windwings and Kim for intentional interference with contractual relations and unjust enrichment.  They allege in their declaratory relief count that they seek a declaration as to the rights and duties of the parties under the 1997 settlement agreement and also seek a declaration that Weinbach and Cyclone own the exclusive motion picture and television rights to the novel outside the United States.

The parties filed cross-motions for summary judgment or summary adjudication. The trial court denied the motions in June 2010, stating, "the parties have provided contrary expert opinions regarding the extent of Cyclone's retained rights by their views of 'trade usage' in the motion picture industry . . . .  Thus, there is a triable issue of

6

material fact impacting the motions submitted by both sides to this action, and effectively defeating summary judgment and/or summary adjudication in its entirety on this, the major issue of the case—the extent of Cyclone's rights."

The trial court stated on the eve of trial that the interpretation of the 1976 settlement agreement was central to the case. The court stated that it would consider the extrinsic evidence and determine whether the evidence presented a question of fact for the jury to decide. The court bifurcated the trial and heard the plaintiffs' declaratory relief count without a jury. After hearing testimony by four expert witnesses and other evidence, the court filed an order on August 8, 2010, concluding that there was no conflict in the extrinsic evidence and therefore no factual issue for the jury to decide relating to the interpretation of the agreement.

The trial court found that the rights granted to Weinbach and Cyclone under the terms of the 1976 settlement agreement were nonexclusive rights to produce a single remake of the motion picture based on the novel. The court stated that the experts agreed that the custom and practice was for a producer to acquire exclusive rights to a remake because without exclusive rights it would be difficult to obtain financing. The court stated, however, that the settlement agreement was not a typical marketplace transaction and that the experts agreed that its terms were nonstandard. The court noted that the rights granted to Weinbach and Cyclone under the settlement agreement were decidedly suboptimal apart from the question of exclusivity, and contrasted those rights with the "sole and exclusive" rights granted by Cylcone to J. S. Company and Tekim only two years earlier and similar language in other prior grants of rights to the novel.

7

The court concluded that the omission of "sole and exclusive" or similar language from the 1976 settlement agreement was intentional and that the rights granted to Weinbach and Cyclone under the agreement were nonexclusive. The court stated further that the interpretation asserted by Weinbach and Cyclone involved the insertion of the term "exclusive" or "sole and exclusive" and would vary the terms of the agreement, contrary to law. The court therefore found in favor of M.U.S.E. and Hanley on their count against Weinbach and Cyclone for declaratory relief. The court continued the trial on other issues until August 2011.

Weinbach and Cyclone challenged the trial court's ruling by petitioning this court for an extraordinary writ. We summarily denied the petition in November 2010 (No. B227900).

M.U.S.E., Hanley, Windwings and Kim as cross-defendants then moved for summary judgment or summary adjudication of each count alleged in the first amended cross-complaint. The trial court granted summary judgment in favor of all cross-defendants in an order filed on August 5, 2011. The court concluded that the 1997 settlement agreement was voidable and subject to rescission based on a mistake of fact resulting from misrepresentations as to the nature and extent of the rights owned by Weinbach and Cyclone, and that all of the counts alleged by Weinbach and Cyclone in their first amended cross-complaint therefore had no merit. The court entered judgment

8

in favor of Windwings and Kim on the cross-complaint in September 2011.[1] Weinbach and Cyclone timely appealed the judgment.

## CONTENTIONS

Weinbach and Cyclone contend (1) the parties presented conflicting expert testimony regarding the custom and practice in the motion picture industry, creating a question of fact for the jury to decide relating to the interpretation of the 1976 settlement agreement; and (2) the trial court erroneously concluded that the interpretation asserted by Weinbach and Cyclone would impermissibly vary the terms of the agreement.

## DISCUSSION

1. *There Was No Conflict in the Extrinsic Evidence and No Question of Fact for the Jury to Decide in Connection with the Contract Interpretation*

The interpretation of a written contract is a question of law for the court to decide unless the interpretation turns on the resolution of a factual question concerning the credibility of extrinsic evidence. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 (*Parsons*).) This means that the interpretation of a written contract is solely a judicial function unless the evidence creates a legitimate dispute as to the truth or falsity of a fact that is both extraneous to the contract and material to its interpretation. If the extrinsic evidence creates such a question of fact, the jury must decide that

---

[1] The litigation proceeded on the complaint by M.U.S.E. and Hanley against Weinbach and Cyclone, so no judgment was entered as between those parties.

9

question before the contract can be interpreted. (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1127.) After the jury decides the facts, the interpretation of the contract either can be submitted to the jury or the court can interpret the contract in light of the jury's factual finding. (*City of Hope, supra,* 43 Cal.4th at p. 396; see *Medical Operations Management, Inc. v. National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 892, fn. 4.) If the facts are undisputed but may give rise to conflicting inferences, in contrast, the question of which inferences to draw from the facts for purposes of contract interpretation is a question of law for the court to decide. (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439; *Parsons, supra,* 62 Cal.2d at pp. 865, 866, fn. 2;[2] *City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 71.)

The custom and practice in an industry is a fact that is relevant to the interpretation of a contract and may inform its meaning. (*Ecco-Phoenix Electric Corp. v. Howard J. White, Inc.* (1969) 1 Cal.3d 266, 271; *Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.* (1988) 205 Cal.App.3d 442, 451.) In accordance with the rules stated above, if evidence regarding custom and practice is in conflict, the jury must resolve the conflict before the contract is interpreted. If such evidence is not in conflict, however, and there is no other conflict in the extrinsic evidence, the interpretation of

---

[2]    *Parsons, supra,* 62 Cal.2d 861, equated conflicting inferences with conflicting interpretations. (*Id.* at p. 866, fn. 2 [" . . . conflicting inferences, actually conflicting interpretations . . . "].)

10

a contract in light of the custom and practice, and in light of any other extrinsic evidence, is a question of law for the court alone to decide.

Weinbach and Cyclone contend the expert testimony is conflicting with respect to the proper interpretation of the 1976 settlement agreement. They argue that conflicting expert testimony regarding the interpretation of a contract constitutes conflicting extrinsic evidence and necessarily creates a question of fact that must be decided by the jury. We disagree.

The experts here opined on the proper interpretation of the 1976 settlement agreement in light of the custom and practice in the industry and the parties' prior dealings. They offered conflicting interpretations of the agreement. *The evidence regarding the custom and practice in the industry and the parties' prior dealings, however, was not in conflict*. The experts agreed that the custom and practice was for a producer to acquire exclusive rights to a remake because without exclusive rights it would be difficult to obtain financing. Weinbach and Cyclone fail to identify any material conflict in the evidence regarding the custom and practice in the industry with respect to the assignment of motion picture rights, and the evidence of the parties' prior dealings is undisputed.[3] The experts' conflicting interpretations of the agreement in light of the undisputed historical facts does not constitute a conflict in the extrinsic evidence and does not create a question of fact for the jury to decide. (*California*

---

[3]     When given an opportunity at oral argument to cite any conflicting evidence in the record, Weinbach and Cyclone only cited evidence of the experts' conflicting interpretations of the 1976 settlement agreement.

11

*National Bank v. Woodbridge Plaza LLC* (2008) 164 Cal.App.4th 137, 143.)  This

conclusion is fully supported by the record.

      2.     *The Trial Court Correctly Concluded that the Rights Granted Under the 1976 Settlement Agreement Were Nonexclusive*

Weinbach and Cyclone contend the trial court's conclusion that their

interpretation of the 1976 settlement agreement would vary the terms of the agreement

contrary to law was error.  We need not decide whether their interpretation of the

agreement is contrary to law.  Absent any factual question regarding the credibility of

extrinsic evidence, we interpret the agreement de novo and are not bound by the trial

court's reasoning.  (*Parsons*, *supra*, 62 Cal.2d at pp. 865-866.)  We conclude that the

rights granted to Weinbach and Cyclone under the agreement were nonexclusive, as we

shall explain, so we need not decide whether the agreement is reasonably susceptible of

their contrary interpretation or whether their interpretation would impermissibly vary

the terms of the agreement.

" 'We interpret a contract so as to give effect to the mutual intention of the

contracting parties at the time the contract was formed.  (Civ. Code, § 1636.)  We

ascertain that intention solely from the written contract if possible, but also consider the

circumstances under which the contract was made and the matter to which it relates.

(*Id.*, §§ 1639, 1647.)  We consider the contract as a whole and interpret its language in

context so as to give effect to each provision, rather than interpret contractual language

in isolation.  (*Id.*, § 1641.)  We interpret words in accordance with their ordinary and

popular sense, unless the words are used in a technical sense or a special meaning is

12

given to them by usage.  (*Id.*, § 1644.)  If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs.  (*Id.*, § 1638.)' [Citation.]" (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 695.)  If contractual language is ambiguous, we may consider extrinsic evidence of the parties' intention in order to resolve the ambiguity.[4]  (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co., supra,* 69 Cal.2d pp. 39-40.)

Tekim granted Cyclone and Weinbach "all rights and licenses necessary to produce, distribute and otherwise exploit for its own account a remake of the motion picture 'The Killer Inside Me' based upon the literary material acquired by Cyclone" from Weinbach and other named individuals, as distinguished from any other literary material acquired by Tekim.  In our view, "all rights and licenses necessary to produce . . . a remake . . . " falls far short of "the sole and exclusive" rights to the literary work or "100% ownership interest in and to all of the right, title and interest of the Seller" previously assigned by Cyclone and Weinbach to Tekim.  Other prior assignments in the chain of title, which the parties were aware of, also used language

---

**4**    " '[E]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible.' (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912 [75 Cal.Rptr.2d 573].)  'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' (*Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641], citing numerous authorities.)" (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391.)

explicitly denoting exclusivity or the assignment of all rights owned by the assignor.[5] Such language is conspicuously absent from the 1976 settlement agreement.

Moreover, the 1976 settlement agreement was not a typical marketplace transaction, in which the experts testified the producer ordinarily would receive exclusive rights to exploit the literary work. Instead, the agreement was in settlement of litigation arising from Weinbach's termination as the director and a producer of the 1975 motion picture, The Killer Inside Me. As the trial court noted, (1) the rights granted to Weinbach and Cyclone under the 1976 settlement agreement were limited to the literary material previously acquired by Cyclone from Weinbach and others, to the exclusion of other literary material (i.e., other screenplays) separately acquired by Tekim; (2) there was no assurance that Weinbach and Cyclone would acquire the domestic rights to the novel in the event of Thompson's death and the reversion of those rights to his heirs, as later occurred; and (3) the rights granted to Weinbach and Cyclone were further limited by a "holdback" provision allowing them to produce and distribute a remake only after the termination of a prior distribution agreement or after the expiration of a seven-year period. These limitations on the rights granted to Weinbach

---

[5]     Thompson assigned to Warner Bros. in 1968, "exclusively and forever, for the entire universe . . . all rights of every kind and nature whatsoever in and to [the novel]," excluding only certain book publishing rights, and specifically including "the sole and exclusive motion picture rights . . . throughout the world." Warner Bros. assigned and quitclaimed all of its rights acquired from Thompson to Greenway Productions, Inc., in 1970. Greenway Productions, Inc., then assigned "all of its right, title and interest in and to the motion picture and television rights" to Cyclone in 1974.

and Cyclone under the settlement agreement distinguished the transaction from a typical marketplace transaction involving the assignment of motion picture rights.

We conclude that the language of the 1976 settlement agreement, including the absence of the words "sole and exclusive" or similar language, and the surrounding circumstances indicate that the rights granted to Weinbach and Cyclone were nonexclusive rights to produce "a remake" using the specified literary material. The trial court's ruling on this issue was correct.

### *DISPOSITION*

The judgment is affirmed.  Windwings and Kim are entitled to recover their costs on appeal.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.