Filed 7/20/21  Arnold v. Toole CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GAIL ARNOLD,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TIMOTHY TOOLE,<br><br>    Defendant and Appellant. | D077295<br><br><br>(Super. Ct. No. 37-2019-00065593-CU-HR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Matthew Brower, Judge.  Affirmed.

Timothy R. Toole, in pro. per., for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

In 2014, Gail Arnold obtained a five-year civil harassment restraining order against her neighbor Timothy Toole.  One month after that order expired, in 2019, Arnold sought and obtained a new restraining order against Toole.  Toole now challenges this 2019 order.  We determine Toole's appellate contentions are without merit, and affirm.

# FACTUAL AND PROCEDURAL SUMMARY

## Background

At the relevant times, Arnold and Toole were neighbors who lived in adjacent duplexes.

In November 2014, the court granted Arnold a five-year restraining order (November 2014 order) based on evidence showing Toole repeatedly yelled obscene and threatening words, including " 'you're a fucking whore' "; " 'suck my dick' "; " 'asshole' "; and " 'bitch.' " (Code Civ. Proc., § 527.6.)[1] Toole also yelled at a neighbor that he had a gun and once screamed at Arnold that " '[I] could kill you right now.' " He would also follow and confront Arnold and other neighbors with a video camera.

Toole appealed, and this court affirmed the order in an unpublished opinion in November 2015. (*Arnold v. Toole,* Nov. 5, 2015, D067317) (*Arnold I*).) We rejected Toole's contentions he was not properly served and that the order violated his free speech rights. (*Ibid.*)

## 2019 Petition for New Protective Order

The November 2014 order expired on November 11, 2019. One month later, Arnold moved for a new restraining order. In support, she submitted her declaration stating she was not aware she could have petitioned to renew the prior order before the order expired. She said she sought the new order because Toole had resumed his harassment against her. She said this harassment included: (1) on November 11 (the date the prior order expired) she found a copy of the November 2014 order on the windshield of her parked vehicle, with the expiration date circled and highlighted; (2) on November 13, 15, and 18, Toole screamed over the fence, " 'you're going to pay me for

---

[1]    All unspecified statutory references are to the Code of Civil Procedure.

getting a 5 year restraining order'" and "you're going to pay for all of this"; (3) on December 5, Toole screamed over the fence that Arnold "was 'evil!'"; and (4) on December 9, Toole again screamed over the fence that Arnold was "going to pay."

Arnold said Toole's harassing behavior "is an almost daily occurrence." She said: "I have told [Toole] to stop several times during the month since the [order] expired; and I . . . told him several times while the [order] was in effect when he made contact with me that he is 'going against the order.' Due to [Toole's] past behavior, I am certain he was screaming in order to harass me and disturb my peace. I am . . . afraid of [Toole], avoid him at all costs, and so I was too afraid to ask him to stop or even call the police . . . ." She said Toole did not learn from the prior order to stop "harassing and stalking" her, and instead he "was just lying in wait, counting the days until" he was able to again "ramp up his campaign of harassment."

Arnold also said that Toole was arrested for violating the order shortly after the November 2014 order was issued. She said she has suffered "severe emotional distress as a result of having to deal with [Toole] for years . . . and "need[s] a restraining order for my protection, safety and peace of mind."

She attached letters written by two former neighbors, who said they were also subject to Toole's threats and harassment. Each neighbor detailed acts of harassment and highly disturbing behavior committed by Toole.

### Toole's Opposition to 2019 Petition

Toole filed a written opposition to the petition. He denied engaging in any inappropriate conduct. He said "a friend" left the note (about the November 2014 order expiring) under Arnold's car windshield wiper. He claimed that on November 19, 2019, Arnold "choked [him] with both hands." He said Arnold's petition contained "deliberate lie[s]." He said the November

3

2014 order "essentially ha[d] me prisoner in my own house" and his neighbors were seeking to obtain the order because they want to have him arrested for no reason.

Toole also presented evidence that although he was once arrested for violating the November 2014 order, the City Attorney did not file charges and made a decision not to prosecute the case. Toole additionally discussed many facts underlying the November 2014 order, and denied the claims contained in the neighbor letters. With respect to the 2014 incidents, he attached photographs taken during 2014.

## Hearing on 2019 Petition

On December 31, 2019, the court conducted a hearing on Arnold's petition. The hearing was not reported or recorded, but based on a later-issued settled statement, the following occurred at the hearing.

Arnold reaffirmed the truth of her statements in her declaration, including her claims that Toole had engaged in several recent acts of harassment, such as placing the note under her car windshield wiper and screaming at her that "you are going to pay for all this" and that she is evil. Arnold testified that she had nothing to add to her declaration, other than "reinforcing that she was a nervous wreck" and has called the police on numerous occasions. She denied Toole's allegation that she had choked him.

In defense, Toole testified he was "confused" as to Arnold's claims that he was "stalking" her and/or "lying in wait" because he did not think any of his alleged conduct rose to this level. (Italics omitted.) He also said the prosecutors refused to prosecute him after his arrest for violating the November 2014 order because the arrest resulted from Arnold's complaint that he was making "masturbating sounds," and those sounds were in fact "diaphragm spasms."

4

Toole testified he could prove the falsity of Arnold's allegations and the statements in the neighbor letters. Specifically, with respect to his claimed conduct on November 18 (yelling at Arnold that she was going to "pay" for obtaining the prior order), he discussed his version of this event and tried to play a videotape of this incident. However, he was unable to show the video because he said the file was too large to load on the video player, and then asked for a continuance. The court denied this request and concluded the hearing.

### Order on 2019 Petition

After the hearing, the court granted Arnold's petition and issued a three-year restraining order. The court ordered Toole not to harass or contact Arnold, or make any effort to find her address or location. The court ordered Toole to stay at least 100 yards away from Arnold, her home, and her work, with two qualifications: (1) Toole need stay only 10 feet from Arnold when entering or exiting his residence; and (2) Toole is "explicitly authorized to do yard work on his properties."

In explaining its conclusions, the court stated it had "carefully review[ed]" the record and found Arnold "met the high burden of proof" by "[c]lear and [c]onvincing evidence." The court said it based its decision "on the law that governs [section] 527.6."

The court also discussed Toole's continuance request. The court said it offered to continue the hearing before the hearing began, but Toole said "he did not want a continuance and asked to go forward with the hearing . . . ." The court then explained its denial of Toole's later continuance request:

> "After hearing [Arnold's] case in chief and after [he] also presented the majority of his [defense], [Toole] attempted unsuccessfully to play a video recording of himself walking around his property on 11/18/19. [Toole] stated that there were 3 minutes of relevant footage in the video. The Court

5

gave [Toole] 10 minutes to attempt to play this video though [his] computer was not working. The Court [then] accepted [Toole's] characterization of the contents of the video without seeing it. [Toole] requested a continuance at this point due to his inability to get his video to play. Due to [Toole's] not requesting a continuance at the outset, permitting [Arnold] to present her whole case, presenting his whole case with the exception of the video, and the Court accepting [Toole's] characterization of the contents of the video, I found that . . . section 527.6(o) did not apply and I was not legally obligated to grant [Toole's] request for a continuance."

**Notice of Appeal and Proposed Settled Statement**

Toole filed a notice of appeal challenging the December 2019 restraining order. He then requested that the court sign a proposed settled statement as to what occurred at the hearing. After reviewing the proposed statement, the court ordered Toole to add three paragraphs to ensure the statement was accurate. These three paragraphs were:

(1) "The prior case between the parties referred to by [Toole] . . . , which also went up on appeal, was assigned Court of Appeal Case Number D067317, resulting in the [November 2014 order] being affirmed on November 5, 2015."

(2) "Regarding [Toole's] alleged inability to play what he claims were videos onto the electronic device he brought with him into court, the most accurate description of what transpired is contained in the Minute Order [quoted above]. The Court paused the proceedings for fully ten minutes while [Toole] appeared to manipulate the electronic device he brought with himself. The Court provided [Toole] the ability to simply describe what the alleged video purported to show. [Toole] did this and the Court dutifully went on to accept the description of the alleged videos' contents. This was considered."

6

(3) "After [the parties] presented their evidence and argued their respective positions, they rested.  [A]fter considering the evidence, the law and arguments of the parties[,] [t]he court found [Arnold] had proven her case by clear and convincing evidence under . . . section 527.6 . . . ."

Toole then filed a new proposed settled statement that included the substance of these three paragraphs.  After considering this new settled statement, the court issued an order certifying that this settled statement was "an accurate summary of the evidence" and was "ready to be transmitted to the Court of Appeal."

## DISCUSSION

### I.  Requests for Judicial Notice and Augmentation

The appellate record consists of the certified settled statement and a clerk's transcript containing (1) Arnold's 2019 petition (with attachments); (2) Toole's 2019 opposition (with attachments); (3) the court's minute order; and (4) the three-year protective order issued on December 2019.

While the appeal was pending, Toole filed three separate motions to supplement this appellate record, and the motions were deferred for the merits panel.  We now rule on those motions.

### A.  Motion to Augment Record

First, Toole moved to augment the record with: (1) his first proposed settled statement, filed on March 5, 2020; and (2) photographs and/or screenshots (with added text) which he refers to as "transcripts of the security cameras from specific dates, Nov 11, Nov 13, Nov 14, Nov 15, and Dec 9."

On a party's motion, "the reviewing court may order the record augmented to include: "[a]ny document filed or lodged in the case in superior

7

court; or [¶] . . . an agreed or settled statement." (Cal. Rules of Court, rule 8.155(a)(1)(A), (B).)

Under this rule, we grant Toole's motion to augment the record with the March 5, 2020 proposed settled statement. This document was before the court, and was relevant to explain the circumstances under which the court ordered Toole to modify the proposed statement and then approved the final corrected statement.

However, we deny Toole's motion with respect to the screenshots/photographs. These documents (including the statements made in the documents) were not before the trial court at the hearing, and thus they are not properly before us on appeal. To the extent Toole now claims these photographs/screenshots were representations from one or more of his video exhibits, we have no basis to know whether this claim is accurate. Because Toole never asked the court to admit these photographs and accompanying text, nor is there any evidence authenticating these items, they are not proper subjects for augmentation. (See *Deyoung v. Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 863 [reviewing court cannot augment record to include documents not filed or lodged below]; see also *Reserve Insurance Company v. Pisciotta* (1982) 30 Cal.3d 800, 813 ["when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered"].)

### B. Judicial Notice Request of Appellate Records

Second, Toole requests that this court take judicial notice of appellate documents in other appeals. Specifically, he seeks judicial notice of (1) our unpublished opinion affirming the November 2014 order (*Arnold I*); (2) the appellate briefs and appellate record from *Arnold I*; and (3) appellate

documents arising from Toole's appeal from a different protective order issued against him in favor of a different neighbor and his family.

We grant this request as to the *Arnold I* opinion. This opinion provides relevant background information and we shall consider it.

However, we decline to take judicial notice of the remaining appellate documents. Although a court may take judicial notice of court records (Evid. Code, § 452, subd. (d)), "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court" absent "exceptional circumstances." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) There are no exceptional circumstances here. Without the trial court's consideration of these documents, they are not relevant to our review of the court's rulings. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 (*Haworth*)*; Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1; *Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.* (2019) 36 Cal.App.5th 766, 775, fn. 4.)

Toole suggests the court did consider the *Arnold I* appellate documents because it referred to this prior appeal when it required Toole to add the three paragraphs to the settled statement. However, there is nothing in these paragraphs supporting that the trial court reviewed the underlying appellate documents. Although the court noted the existence of the prior appeal, it did not state or suggest it had reviewed the appellate records or any documents underlying the appeal.

For similar reasons, we decline to take judicial notice of the second appeal concerning even more attenuated facts involving different protected parties. That appeal was dismissed when Toole failed to file an appellate brief. There is no showing the trial court reviewed any documents filed in

9

that appeal, or that the documents are otherwise relevant to our review of Toole's contentions in this appeal.

## C. Judicial Notice Request of Superior Court Records in Prior Cases

Third, Toole seeks judicial notice of documents in the superior court files from *Arnold I*, and from two cases involving a protective order in favor of a neighbor's family. We decline to take judicial notice of these documents because there is no showing they were presented to the trial court, and there is no indication the trial court reviewed these documents before it issued the order in this case. Thus, they are not relevant to our consideration of Toole's appellate contentions. (See *Haworth, supra,* 50 Cal.4th at p. 379, fn. 2.)

Based on the materials properly before us, we turn to address Toole's arguments on their merits.

## II. Protective Order was Properly Issued

### A. Legal Standards

The court imposed the restraining order under section 527.6, which permits a court to issue a protective order against a person who has engaged in "harassment." (§ 527.6, subd. (a); see *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188-189.) "Harassment" means "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).) A " '[c]redible threat of violence' is a knowing and willful statement or course of conduct that would place a reasonable person in fear for [his or her] safety, . . . and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).)

The purpose of section 527.6 " 'is to prevent future harm to the applicant by ordering the defendant to refrain from doing a particular act.' " (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*

(2005) 129 Cal.App.4th 1228, 1266.)  Before imposing a protective order, a trial court must find clear and convincing evidence that unlawful harassment exists and is likely to continue in the future.  (§ 527.6, subd. (i).)

If the court determines the moving party has met the "clear and convincing" standard, the court's determination will not be disturbed on appeal without a showing of a clear abuse of discretion.  (See *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912; *Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, 1111, fn. 2.)  A court's factual findings are reviewed under the substantial evidence standard.  (*Harris* v. *Stampolis*, (2016) 248 Cal.App.4th 484, 497.)

In applying the substantial evidence test to a court's findings reached under the clear-and-convincing proof burden, we evaluate the evidence under a "heightened degree of certainty" rule.  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 997 (*O.B.*).)  Under this rule, we must consider "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true."  (*Id*. at pp. 995-996.)  In conducting this review, we apply the usual rules for analyzing the record.  We must "view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence."  (*Id*. at p. 996.)

## B.  Clear and Convincing Evidence Supported Protective Order

Arnold presented a declaration identifying specific acts of recent verbal harassment by Toole, including threats to her personal safety.  And she confirmed at the hearing that these facts were true.  The court had a reasonable basis to conclude this conduct would put a reasonable person in fear for her safety, particularly in the context of Toole's repeated and

11

continued inappropriate actions toward her and many of the neighbors. Arnold's declaration, together with her testimony at the hearing, constituted clear and convincing evidence showing the need for a protective order.

In challenging this conclusion, Toole discusses his disagreement with the court's factual conclusions and credibility findings. For example, he argues the court erred by failing to credit his claim that Arnold choked him, and by failing to find Arnold committed "perjury" when she denied that she choked him and when she claimed that he had yelled at her. He also claims the court should have found his behavior was nothing more than "an[n]oying." Based on his view of the evidence, he argues the court did not have a sufficient evidentiary basis to issue the restraining order.

This argument is based on an improper standard for reviewing a trial court's factual conclusions. We must resolve all factual conflicts and credibility questions "in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762; *accord O.B., supra,* 9 Cal.5th at p. 996.)

Under these standards, the court's factual findings were supported by evidence from which the court could conclude it was highly probable Toole had engaged in the alleged harassment. Arnold's statements about the continuing harassment were made under penalty of perjury; the statements were specific and consistent with the evidence at the prior 2014 hearing (as discussed in *Arnold I*); and the statements were corroborated by the assertions in the recent neighbor letters.

If the trial court finds certain witness testimony is credible, an appellate court must accept that credibility finding unless the testimony is

12

incredible on its face, inherently improbable, or wholly unacceptable to reasonable minds. (See *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 786; *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201.) There was nothing in Arnold's evidence that was incredible, improbable, or unreasonable. Arnold's evidence constituted clear and convincing evidence to support the court's finding that Toole had engaged in prohibited harassment supporting the need for the restraining order.

Toole emphasizes his own testimony that he had not engaged in these acts and that Arnold had "choked" him. However, the court, as the factfinder, was not required to accept the truth of these assertions. If a trial court finds a witness's testimony is not credible, a reviewing court is bound by that finding if there are rational grounds for doing so. (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043.) The court had a rational basis for declining to accept Toole's assertions that he had not recently engaged in acts of harassment against Arnold.

### C. Continuance

Toole alternatively contends the court erred in denying his continuance request made at the end of his defense case.

Generally, a party responding to a protective order motion "shall be entitled, as a matter of course, to one continuance, for a reasonable period, to respond to the petition." (§ 527.6, subd. (o).) Because Toole had already responded to the petition, this provision was inapplicable. (*Ibid.*; *Goals for Autism v. Rosas* (June 24, 2021, No. A158062) __ Cal.App.5th __, ___ [2021 Cal.App. Lexis 527] (*Goals*).) Moreover, the court offered to continue the hearing before it began, but Toole specifically denied he wanted or needed a continuance, and instead said he wanted to go forward with the hearing.

13

Thus, when he changed his mind and sought a continuance near the end of the hearing, Toole was required to demonstrate good cause for the requested continuance. (§ 527.6, subd. (p); see *Goals, supra,* 2021 Cal.App. Lexis 527, at p. *3.) In this respect, the statute provides: "[e]ither party may request a continuance of the hearing, which the court shall grant on a showing of good cause. The request may be made in writing before or at the hearing, or orally at the hearing." (§ 527.6, subd. (p).)

Trial courts have broad discretion in deciding whether to grant a continuance request under these circumstances. (See *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.) In exercising this discretion, the court should ensure the parties have the full opportunity to present their cases, while also being mindful that section 527.6's purpose is to " ' "provide quick relief to harassed persons," ' " and to provide a "simple" and "truncated procedure." (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 520-521.)

Under these standards, the court did not abuse its discretion. Toole sought the continuance after Arnold had presented her case and after Toole had presented his testimony and several exhibits. Toole said he was unable to play a video that he claimed depicted one of the occasions when he was accused of screaming at Arnold. But he did not say how long a continuance he would need or that the continuance would solve his claimed technological problems. The court responded by asking Toole to describe what the video would show, and the court said it would accept the truth of this representation. The court then denied the continuance request as untimely and unnecessary.

The court had a reasonable basis to deny the continuance request. Based on its review of all of the evidence, including a firsthand observation of the parties' demeanor and the words and tone of their testimony, the court

14

was best able to determine the necessity of watching the three-minute video in addition to accepting Toole's representation of what was shown on the video. The court's decision that there was no valid reason to delay the proceedings to view the video was an appropriate exercise of its discretion.[2]

Further, even assuming error, Toole has not met his burden to show the court's ruling prejudiced him. (Cal. Const., art VI, § 13; Evid. Code, § 475.) A denial of a continuance results in reversible error only when the ruling results in the denial of a fair hearing or otherwise affects the outcome of the proceeding. (See *In re Marriage of Johnson* (1982) 134 Cal.App.3d 148, 155.)

Toole was present at the hearing, and told the court what the three-minute video would have shown, and the court said it accepted the truth of this explanation. The court had a reasonable basis to conclude that even assuming the video did not show any improper actions by Toole, he could have engaged in harassment at other times of the day or night. The court's denial of the continuance request did not constitute prejudicial error.

In this respect, Toole's reliance on *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719 is misplaced. The *Schraer* court held the trial court erred in granting a section 527.6 protective order because it had refused to consider whether the defendants had engaged in past harassment, and would not allow the parties to present *any* oral testimony at the hearing. (*Id.* at pp. 725, 731-733.) On the latter issue, the court reasoned that "[t]o limit a defendant's right to present evidence and cross-examine . . . would run

---

[2]    Toole says he also wanted to show five additional videos, but the record does not support that he asked to show these videos during the hearing or that these videos were relevant to the issues before the court regarding the issuance of a new protective order.

the real risk of denying such a defendant's due process rights, and would open the entire harassment procedure to the possibility of successful constitutional challenge on such grounds." (*Id.* at p. 733.) The court thus held that "if . . . offered, relevant oral testimony must be taken from available witnesses . . . ." *(Ibid.)*

The court here acted consistent with this holding. The court permitted oral testimony, and understood it was required to decide the truth of Arnold's claims that Toole had engaged in harassment after the November 2014 order had expired.

## D.  Records From Prior Appeal

Toole next contends the court improperly reviewed the files and records from the prior *Arnold I* appeal. This argument is without merit because there is no showing the court reviewed these files.

In support of this argument, Toole relies on the court's ruling that he should add a reference to the prior protective order and appeal in the settled statement. However, as noted in Part I, there is nothing in this ruling showing the court reviewed the records underlying the *Arnold I* appeal. Instead, it appears the court added this paragraph to reflect its awareness that there was a prior protective order in the case and that the order had been affirmed on appeal. These facts are undisputed. The court's reference to the order and prior appeal did not constitute error.

## E.  Additional Arguments

In his appellate briefs, Toole raises several additional arguments, many of which pertain to our determinations in *Arnold I*. We have considered each of these arguments, and conclude they have no merit.

## DISPOSITION

Affirmed.  Appellant to bear respondent's costs (if any) on appeal.


HALLER, Acting P.J.

WE CONCUR:


AARON, J.


IRION, J.

17